Iseman *v.* Joe F. Sherman Company, Appellant.

Argued March 23, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Robert M. Dale*, with him *John W. Rohrer* and *Chester H. Byerly*, for appellant.

*Robert E. Ashe*, with him *E. O. Golden* and *Edward J. Steiner*, for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, May 24, 1954:

This is an action to quiet plaintiffs' title to certain coal against defendant's claim of a leasehold interest therein. From a welter of criminations and recriminations between the parties there emerges an established legal principle which, when applied to the facts, points to the proper determination of this controversy.

In 1937 Robert R. Hodgson sold and conveyed to the Pennsylvania Game Commission the surface rights

in 1113.8 acres of land in Mahoning Township, Armstrong County, said tract being thenceforth known as Game Lands No. 137; Hodgson reserved the underlying coal and limestone. In 1944 plaintiffs acquired ownership of the coal under 187 acres of this tract lying west of State Highway Route 66. By lease dated September 1, 1945, Hodgson leased to plaintiffs, for a period not to exceed 20 years, all the *Lower* Freeport Vein of coal under land which included the 926.8 acres of Game Lands No. 137 lying east of Route 66. On July 26, 1950, Hodgson leased to defendant, for a period of five years, all of the Freeport Vein of coal under those 926.8 acres; this lease was dated back to April 18, 1950, defendant claiming that it was on that date that Hodgson had orally agreed to give it such a lease. While, as stated, the lease was of *all* of the Freeport Vein, defendant frankly admits that it was intended to cover only the *Upper* Freeport Vein. The Lower and Upper veins are 35 to 40 feet apart.

It was defendant's purpose, as Hodgson well understood, to remove the coal acquired under its lease by the process of stripping, and, as a result of their discussion on that subject, they concluded that it would be advisable for defendant to obtain permission of the Pennsylvania Game Commission to mine by that method. Accordingly, simultaneously with the execution of the lease, they executed a collateral agreement wherein defendant agreed to carry out the provisions of the lease provided permission was obtained from the Commission to strip mine the leased property within      days after July 26, 1950, and Hodgson agreed that if defendant did not reach such an agreement with the Commission he would waive the provisions of the lease and declare the same null and void. The reason why the number of days for obtaining such permission was left blank was because, although

they discussed a period of 60 to 90 days, they did not know the likely time that might be required to obtain action by the Commission, and so they arranged that later, upon being better informed in this regard, they would agree upon a period and insert it in the collateral agreement.

Defendant immediately started to take the necessary steps to obtain from the Game Commission the strip mining privilege. Within a week after the execution of its lease it made formal application to the Commission for that purpose. The Commission has never acted on its application, the reason for its inaction being the basis of the present controversy between the parties.

On July 13, 1950, plaintiffs wrote to the Commission asking for an appointment "to discuss the possibility of strip mining some of the coal underlying Game Lands No. 137." The letter stated: *"We own the coal under this tract of land."* On July 26, plaintiffs wrote again to the Commission saying: ". . . please consider this letter as our application *for the stripping rights on game lands number 137."* Thus within a few days the Commission had received applications from both plaintiffs and defendant for strip mining rights on Game Lands No. 137, and, being naturally confused, therefore, as to the respective titles of the parties, it postponed action on both applications at its meeting on October 27, 1950. At its next meeting on January 3, 1951, it decided that it would consider further action only after the question had been resolved. On August 5, 1951, it once more refused to take action. On October 3, 1951, the matter being then in litigation, it gave it no further consideration, and both plaintiffs' and defendant's applications have since been tabled until the rights of the parties shall have been judicially determined.

An additional significant fact should be stated. Defendant had immediately notified the Commission that it did not dispute plaintiffs' rights to strip mine the 187 acre tract, and accordingly the Commission, on August 8, 1950, promptly granted to plaintiffs the privilege of strip mining the coal underlying that tract. It is obvious that if plaintiffs had, with equal frankness, explained to the Commission that they had no title or claim to the Upper Freeport Vein, defendant would have received similar prompt approval of *its* application to strip mine that vein since both applications offered the same royalty to the Commission of five cents per ton. But the testimony indicates, that, on the contrary, both Hodgson and plaintiffs acted in every way to hinder, delay and prevent defendant from securing the permission for which it had applied in order thereby to enable Hodgson to cancel defendant's lease by virtue of the authority given in the collateral agreement of July 26, 1950, if such permission were not procured. Plaintiffs' letters to the Commission of July 13th and July 26th were, whether intentionally or otherwise, extremely vague, confusing, and even deceptive; they spoke of *"some* of the coal underlying Game Lands No. 137," stated that *"We own the coal under this tract of land,"* and applied generally for *the stripping rights "on Game Lands No. 137."* [1] Instead of explaining to the Commission

---

[1] In their 17th request to the court below for Findings of Fact, plaintiffs state that their application to the Game Commission of *January 31, 1951,* for stripping rights on the east side of Route 66 of Game Lands No. 137, was the *first* application on their part that referred to stripping rights on said east side. Inconsistently, however, in their 8th request for conclusions of law they state that their letter of July 13, 1950, and their application of July 26, 1950, for stripping rights in context and by implication referred only to the coal west of Route 66 *and to such portion of the lower Freeport Vein for which they held a lease under date of September 1, 1945 as could be stripped.*

that their rights as to any coal east of Route 66 covered only the Lower Freeport Vein, Mr. Frye, the Executive Director of the Commission, testified, without contradiction, that one of the plaintiffs visited him and asserted that plaintiffs had the right to strip the same land covered by defendant's application. Defendant urged Hodgson to confirm defendant's lease to the Commission but he refused to do so, and the reasons which really motivated him, as well as plaintiffs, in their attitudes and their actions are quite clear from the testimony. Within a week after the execution of the lease to defendant plaintiffs offered to purchase from Hodgson all the coal underlying Game Lands No. 137 together with Hodgson's interest in a certain corporation for a price which Hodgson admitted would be a good deal for him if he could get out from under defendant's lease. He himself testified that he told plaintiffs he could not "do business with anyone for 90 days" because of the lease agreement with defendant, but if defendant did not obtain permission from the Game Commission within that period he "would feel safe in selling it." As a matter of fact Hodgson did not even wait the expiration of 90 days but on September 28, 1950, entered into an agreement with plaintiffs to sell them the coal under Game Lands No. 137 together with his interest in the Harvey Company, and in pursuance of that agreement he made a deed to plaintiffs on January 27, 1951, of all the coal, except that already owned by plaintiffs under the 187 acre tract. Further confusing the situation plaintiffs then submitted another application to the Commission for stripping rights on the east side of Route 66 on Game Lands No. 137. It is abundantly clear, therefore, that both Hodgson and plaintiffs were eager to prevent defendant from gaining permission from the Game Commission to strip mine the coal un-

der defendant's lease, so that, if they succeeded in so doing, Hodgson could cancel it. Having achieved their purpose, Hodgson, who, as already stated, had agreed on September 28, 1950, to sell the coal to plaintiffs, wrote to defendant on December 27, 1950, requesting it to surrender its lease, which defendant refused to do. On March 2, 1951, plaintiffs instituted the present action to quiet title by having the court direct defendant to file of record a surrender of its lease or to admit its invalidity. Defendant, on the other hand, in its answer to the complaint, requested the court to decree that its lease was valid and not a cloud upon the right, title and interest of plaintiffs in and to the coal under the 926.8 acre tract, and that it was entitled to a reasonable time, without hindrance by plaintiffs, to obtain permission of the Game Commission to strip mine that area. The court below adjudicated defendant's lease to be null and void and decreed that it constituted a cloud upon plaintiffs' title. From its order or decree to that effect defendant appeals.

It might be noted in passing that, if the collateral agreement of July 26, 1950, on which plaintiffs rely to sustain their position in this case, were to be taken *literally,* it apparently would not give Hodgson any right at all to nullify defendant's lease because of defendant's failure to obtain permission from the Game Commission for stripping rights within some reasonable time. As worded, it would seem not to grant any option to Hodgson to terminate the lease, but rather to have been designed entirely for the protection of defendant, so that, if it failed to obtain permission of the stripping privilege, *it* would not be obliged to go ahead with the lease. *Defendant* agreed to carry out the provisions of the lease *provided* [that is, *only in case*] such permission were obtained within      days. *Hodgson* in return agreed that, if such permission were

not obtained, he would *waive* the provisions of the lease and declare it null and void. A *waiver* is the relinquishment of a right, not the creation of one; what he agreed was that *he would be willing to release the defendant* from the obligations of the lease if it failed to obtain the desired permission. However, in view of the fact that Hodgson was to be paid royalties under the lease on the basis of the coal removed whether by drift mining or stripping process, it may be presumed that, notwithstanding the inept language of the collateral agreement, it was intended not only to give defendant the right to withdraw from the lease agreement if permission were not obtained for the stripping privilege but also to give Hodgson the right, in that contingency, to cancel the lease. Accordingly we shall so construe it.

As stated in the beginning of this opinion there is a well established principle of law which determines the controversy between these parties. It is not a question of the amount of time to which defendant was entitled under the collateral agreement in order to obtain the permission for strip mining the coal, for, in the absence of an agreement of the parties covering the matter, the law implies a reasonable time as representing their presumed intention;[2] in the present case such reasonable time would probably have been a period of three or four months in view of the fact that the Game Commission might not have sooner had a meeting to consider defendant's application. But here defendant justly invokes the doctrine that where performance by one of the parties to a contract is pre-

---

[2] *Shepler v. Scott*, 85 Pa. 329, 332; *Bossart v. Erie Coal Mining Co.*, 276 Pa. 63, 67, 119 A. 731, 732; *L. C. S. Colliery, Inc. v. Globe Coal Co.*, 369 Pa. 1, 11, 84 A. 2d 776, 782; *Andre v. Andre*, 123 Pa. Superior Ct. 597, 603, 187 A. 321, 323.

vented by the other party no advantage can be taken of the default by the party who caused it. If a party's rights under a contract are conditioned upon the occurrence or non-occurrence of some event, his rights under the contract are not forfeited by a breach of the condition brought about in whole or in part by the acts or conduct of the other party. And so, where a party who insists upon an exact time for performance by the other party has himself been the cause of delay, he cannot defeat the rights of the other party on the ground of such delay. This principle, variously expressed, has found application in a multitude of Pennsylvania authorities.[3] Here Hodgson and plaintiffs were undoubtedly responsible for the failure of the Game Commission to grant permission of the stripping privilege to defendant,—Hodgson by his refusal to explain and confirm to the Commission the rights granted to defendant under its lease and to straighten out the situation with the Commission as he could readily have done, and plaintiffs by their misleading applications and statements to the Commission. It was they—Hodgson and plaintiffs—who caused defendant's failure to obtain the strip mining privilege, of which failure plaintiffs are now seeking to take advantage. Since plaintiffs, by virtue of the deed of January 27, 1951, are grantees from Hodgson of the title, they are, as privies, bound as much by his acts and

---

[3] For example, *Vankirk v. Patterson*, 201 Pa. 90, 95, 50 A. 966, 967; *Boyd v. Hoffman*, 241 Pa. 421, 423, 88 A. 675, 676; *Piacentino v. Young*, 272 Pa. 556, 559, 116 A. 407, 408; *Loughney v. Quigley*, 279 Pa. 396, 401, 124 A. 84, 86; *Brown v. Hill*, 280 Pa. 1, 4, 124 A. 184, 185; *Paralka v. Grummel*, 282 Pa. 235, 238, 127 A. 619, 620; *Unatin 7-Up Co., Inc. v. Solomon*, 350 Pa. 632, 636, 39 A. 2d 835 837; *Erkess v. Eisenthal*, 354 Pa. 161, 164, 47 A. 2d 154, 156; *Bloshinski v. Falaz*, 168 Pa. Superior Ct. 565, 569, 79 A. 2d 798 800. Cf. Restatement, Contracts, §315.

conduct as by their own: *Floyd v. Kulp Lumber Co.,* 222 Pa. 257, 269, 71 A. 13, 15.

It is our opinion that defendant's lease agreement dated April 18, 1950, is valid and not a cloud upon the rights, titles and interests of plaintiffs in and to the coal under the area described in that lease; also that defendant is entitled to a period of four months from the date hereof in which to obtain the permission of the Game Commission to strip mine the leased area, during which time it shall not be hindered, delayed or prevented by plaintiffs, or anyone on their behalf, in or toward the obtaining of such permission. Upon failure to obtain such permission within said period the lease of April 18, 1950, shall thereupon be and become null and void, unless otherwise determined by the court for cause then shown.

The order of the court below is reversed, and the record is remanded with direction to enter an order in accordance with this opinion; plaintiffs to pay the costs.