## Wilcox *v.* Regester, Appellant.

Argued January 6, 1965. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Abraham J. Brem Levy,* with him *Bernard I. Shovlin* and *Edmund P. Hannum,* for appellant.

*John W. Frazier, 3rd,* with him *Joseph I. Diamond,* and *Crawford & Frazier,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, March 16, 1965:

On March 1, 1963, appellant, Robert Regester, agreed to sell his restaurant liquor license to Two West Avenue Corporation for $12,500. Of this sum, $2,000 was paid directly to appellant and $10,500 was deposited in an escrow account. The agreement of sale was conditioned upon the approval of the transfer of the license by the Pennsylvania Liquor Control Board. Appellant agreed that he would execute all forms required by the board for the purpose of transferring the license. No date was fixed for the consummation of the sale.

Two West Avenue Corporation assigned all of its right, title and interest in this agreement to appellees, James Wilcox and Harry Yarrow. In turn, appellees reassigned the agreement for $20,000 to John Dutton and C. N. Agnew and, later, to Traders Investment Corporation (Traders), the nominee of Dutton and Agnew. The reassignment from appellees to Dutton and Agnew provided that it would become null and

void and that the parties would be relieved of further liability or obligation in the event the Liquor Control Board failed or refused to approve the transfer to Dutton and Agnew or their nominee.[1] Appellant had notice of and consented to each of the assignments but he was not informed of the terms of the reassignment to Dutton and Agnew.

In accordance with the agreement of sale, appellant and Traders filed an application with the Liquor Control Board seeking to transfer the license. After processing the application, the Liquor Control Board notified Traders that it would not complete its investigation until appellant and Traders executed a new agreement of sale reflecting the full consideration of $20,-000.[2] Appellant, now aware of the $20,000 reassignment, refused to enter into such a new agreement unless he received a portion of this increased consideration.

Subsequently, appellant declared that the original agreement of sale had been violated and that, in accordance with that agreement,[3] he was retaining the $2,000

---

[1] The agreement states: "In the event the Pennsylvania Liquor Control Board fails or refuses to approve the transfer of the aforementioned licence [sic] to the Seller [appellees] or Buyer [Dutton and Agnew], this agreement shall become null and void and there shall be no further liability or obligation by either of the parties."

[2] The Board's letter read, in part: "It will be necessary that the present licensee (transferor) [appellant] and the applicant (transferee) [Traders] enter directly into an agreement for the transfer of this license and the sale of the licensed business for the full consideration involved in this transaction.

"A re-investigation will be conducted after this office has been notified that the above requirements have been met."

The Board also gave notice that the charter of Traders Corporation would have to be amended before approval would be given. This was subsequently accomplished.

[3] The original agreement of sale contained a clause stating: "In the event the Pennsylvania Liquor Control Board fails or re-

payment as liquidated damages. The board then refused to approve the transfer of the liquor license to Traders; Dutton and Agnew notified appellees that they would not appeal the decision of the board.

Appellees filed a complaint in equity seeking to compel appellant to transfer the license to them. The chancellor made findings of fact and conclusions of law sustaining appellees' right to specific performance or damages for loss of profits. The court concluded that appellees had fully performed their obligations pursuant to the terms of the agreement and that appellant had wrongfully withheld his co-operation, thereby preventing appellees from completing their sale to Traders.

A decree nisi was entered directing appellant to execute the necessary papers to effectuate the transfer of the license to appellees. In the alternative, the decree directed appellant to return to appellees the $2,-000 retained as liquidated damages, to release the escrow fund of $10,500, and to pay appellees $7,500 for loss of profits. Exceptions were filed, argued and dismissed. The decree nisi was made absolute and this appeal followed.

Appellant raises two questions by this appeal. First, are appellees, as assignors of the contract, real parties in interest in whose behalf such action might be instituted? Second, was the refusal of appellant to execute the new agreement requested by the Liquor Control Board a breach of appellant's agreement to sell so that appellant is now liable to appellees?

------

fuses to approve the transfer of the aforementioned license because of some fault or omission by the BUYER to qualify for the license, the SELLER shall retain the Two Thousand Dollars ($2,-000.) paid on account by BUYER . . . ."

Appellant stated that the noncompletion of the settlement and intended transfer forced him to renew the license in order to save it from cancellation.

480

In deciding this case, we first look to the applicable general principles. Rule 2002 of the Rules of Civil Procedure requires that all actions be prosecuted by the real party in interest. In an assignment, the nature of the particular assignment determines the identity of the real party. Ordinarily, an effective assignment is one by which the assignor's right to performance by the obligor is extinguished and the assignee acquires a similar right to such performance. Restatement, Contracts §150(1) (1932); see *Purman Estate*, 358 Pa. 187, 190, 56 A. 2d 86, 88 (1948). Therefore, the assignee *is* usually the real party in interest and an action on the assignment must be prosecuted in his name.

Conditional assignments present added difficulties. Nevertheless, an assignment is not ineffective merely because it is conditional, and such a conditional assignment will not extinguish the assignor's right as a real party until the condition occurs. Restatement, Contracts §150(2) and comment *b* (1932); 4 Corbin, Contracts §875 (1951). Importantly, however, an assignment of a right will not be effective if it purports to make a material change in the duties or responsibilities of the obligor, unless the obligor assents to such changes. Restatement, Contracts §151(a) (1932); see *Gordon v. Hartford Sterling Co.*, 319 Pa. 174, 178, 179 A. 234, 236 (1935); 4 Corbin, Contracts §870, at 475 (1951).

With these principles in mind, we examine the contentions of the parties. Appellees point out that their assignment to Traders was conditioned upon the approval of Traders by the Liquor Control Board. They claim that upon the refusal by the Board to approve the transfer of the license to Traders, this assignment became null and void. Appellees' conclusion is that since the condition on which the assignment was based never occurred, their rights were never extinguished.

While we agree that the assignment by appellees to Traders was, in fact, conditional, we nevertheless conclude that appellees are precluded from successfully asserting that they have remained as real parties in interest who are now able to enforce the contract on their own behalf. We reject appellees' conclusion because, in our view, it would materially increase the burden and responsibility of appellant without his necessary consent.

Under the terms of the original agreement of sale, appellant was obliged to execute all papers and do all necessary acts required by the Liquor Control Board. In the event that the proposed transferee should be rejected by the Liquor Control Board, each of the parties was to be immediately released from his respective obligations under the agreement. Appellees now claim, however, that their conditional assignment has caused appellant to remain bound by the agreement, notwithstanding the rejection of Traders by the Liquor Control Board. If this were so, appellant would be subjected to the new and additional burden of doing all things necessary in submitting a second application to the Liquor Control Board. Thus, instead of being bound to comply with the terms of his agreement once, appellant would now be bound to comply twice.

The burdens which appellees seek to impose on appellant manifest themselves not only in the additional acts required of appellant, but also in the extension of the period of time during which appellant would be bound. We recognize, of course, that the original agreement of sale contained no required completion date, and that, consequently, time was not of the essence in this contract. The time for completion, however, is not unlimited and it must be reasonable in light of the existing circumstances. E.g., *Iseman v. Joe F. Sherman Co.*, 377 Pa. 426, 433, 105 A. 2d 160, 164 (1954); *L.C.S. Colliery, Inc. v. Globe Coal Co.*, 369

Pa. 1, 11, 84 A. 2d 776, 782 (1951); *Detwiler v. Capone,* 357 Pa. 495, 502, 55 A. 2d 380, 385 (1947). We consider it unreasonable and a material increase of the burden on appellant to require him to wait for a second determination by the Liquor Control Board.

Appellant's unwary assent to the assignment to Dutton and Agnew does not bar him from objecting to the additional burdens which appellees now seek to impose upon him. These extra burdens would constitute an impermissible modification of the original obligations of appellant. An agreement may be modified with the assent of both contracting parties if the modification is supported by consideration. E.g., *Pellegrene v. Luther,* 403 Pa. 212, 215, 169 A. 2d 298, 299 (1961); *Stoner v. Sley System Garages,* 353 Pa. 532, 533-34, 46 A. 2d 172, 173 (1946).

In this case, however, appellees failed to inform appellant of the conditional nature of the assignment to Dutton and Agnew. Nor did appellees inform appellant of their intent not to relinquish their right to enforce the original contract in the event that Traders was rejected by the Liquor Control Board. Neither did appellees, of course, secure an effective consent. Moreover, only the unconditional terms of the assignment to Traders were endorsed on the original agreement of sale; no reference was ever made to the further conditions contained in the agreement of assignment to Dutton and Agnew. Appellees may not now claim that appellant assented to these additional obligations since they have concealed from appellant the facts which would impose these obligations upon him. The undisclosed terms—unassented to by appellant—are not enforceable against him.

Upon being informed of the true nature of this assignment, appellant did indicate a willingness to assume these extra obligations if, in exchange, he received added consideration. Since appellees refused

to pay appellant additional compensation they cannot now impose these obligations upon appellant. Such added obligations may not, as we have observed, be enforced in the absence of supporting consideration.

Appellant was prepared at all times to consummate the transaction as originally contemplated, as he was legally required to do. But he should not now, in the absence of legally binding contractual provisions, be subjected to additional and unexpected demands resulting from appellees' conditional assignment to Dutton and Agnew.

Nor can we agree with the court below that appellant's refusal to execute a new agreement was a breach of the original agreement of sale and the sole cause of appellees' loss of their intended sale, thereby rendering appellant liable for the loss of appellees' bargain. The requirement by the Liquor Control Board that appellant execute a new agreement for $20,000 with Traders resulted directly from the assignment to Dutton and Agnew by appellees. The execution of such a new agreement would be a contrivance, requiring performance not mandated by or reflected in the actual agreement entered into and contemplated by appellant. Such a new agreement would require the establishment of a second escrow fund for the benefit of appellees. We will not allow appellees, by their own assignment, to impose upon appellant the potential complications and burdens of a new and different agreement, containing terms which are contrived and fictional, if appellant has neither assented to nor received added compensation or other valid consideration for the additional commitments and burdens.

Furthermore, it has not been satisfactorily demonstrated that appellant, by his refusal, was, in fact, the sole cause of the failure of the Liquor Control Board to approve the transfer and that he is, therefore, liable for damages in the amount of $7,500 for

loss of profits. Many requirements must be met by an applicant for a liquor license. See *Obradovich Liquor License Case,* 386 Pa. 342, 126 A. 2d 435 (1956). The record does not reflect that the Liquor Control Board ever indicated it would have transferred the license but for the absence of a new agreement. In its letter to Traders, the Board stated only that upon receiving the new agreement "a re-investigation will be conducted . . . ."[4] In seeking damages for breach of contract, a party must be able to prove such damages with reasonable certainty. E.g., *Adams v. Speckman,* 385 Pa. 308, 122 A. 2d 685 (1956). Even were we to hold that appellant had violated the terms of this contract by refusing to sign the new agreement, the record facts do not support the conclusion that, but for appellant's refusal, Traders would have been approved by the Liquor Control Board. Under such circumstances, it cannot be maintained that appellees' damages are reasonably certain.

The reasons for denying appellees the right to enforce their supposed contract are not applicable to bar them from asserting their right to recover the $2,000 held by appellant as liquidated damages and to secure the return of the $10,500 held in escrow. Dutton and Agnew have completely relinquished all of their rights under the assignment. The money now held by appellant belongs only to appellees. No prejudice results to appellant by allowing appellees to sue for the return of their money. Although the assignment by appellees resulted ultimately in the failure of the Liquor Control Board to approve the transfer of the license, we do not believe that these actions constituted such fault or omission[5] which would subject appellees to liquidated damages. Accordingly, we agree with

---

[4] See note 2 supra.

[5] See note 3 supra.

the court below that appellant should return to appellees the $2,000 presently held as liquidated damages and should release the escrow fund of $10,500 to them.

The decree is therefore limited to the items of recovery we have specified and is amended accordingly.

Decree, as modified, affirmed. Each party to pay own costs.

Mr. Chief Justice BELL concurs in the result.

CONCURRING OPINION BY MR. JUSTICE COHEN:

While I join in the majority opinion I feel that a few additional observations might be merited.

The Pennsylvania Liquor Control Board Act, as amended, 47 P.S. §4-468 provides that: *"licenses issued under this article may not be assigned."* (Emphasis supplied.) On the other hand, the Act does permit a licensee to transfer under conditions provided for in the Act and the rules and regulations established by the Board. We recognized this right in *Feitz Estate*, 402 Pa. 437, 167 A. 2d 504 (1961), where we held that the value of the statutory right to apply after death for the transfer of a restaurant liquor license owned by a decedent at the time of his death is taxable for inheritance tax purposes. We further recognized this right by holding that where a licensee contracts to transfer his license to another an action will lie for specific performance of that contract. *Pichler v. Snavely*, 366 Pa. 568, 79 A. 2d 227 (1951). But never have we held that the right to transfer a license was itself assignable under the Act. Such right of transfer is available only to a present licensee.

The instant litigation provides a good example of why we should adhere firmly to the idea that a liquor license is a privilege personal to the licensee, that it is not an asset to be traded through the usual market mechanisms, and that its transfer is permitted only to the degree and in the manner provided by the Act and Board regulations.