389 A.2d 532

COMMONWEALTH of Pennsylvania, Appellee,

v.

Stephen E. PENDLETON and Jeanette B. Pendleton, Appellants.

Supreme Court of Pennsylvania.

Argued Jan. 17, 1978.

Decided July 14, 1978.

Reargument Denied Aug. 16, 1978.

Davis & Murphy, Robert J. Murphy, Towanda, for appellants.

Dowd & Kocsis, Michael J. Dowd, John Kocsis, III, Athens, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

On June 25, 1963, Stephen E. and Jeanette B. Pendleton by written agreement gave the Pennsylvania Game Commission (Commission), for a stated consideration of $1.00, an option to buy 24.3 acres of farmland at $20.00 per acre. The Commission accepted the option on October 14, 1963, thus

converting the option agreement into a contract of sale. The Commission subsequently discovered, however, that the Pendletons' title was defective because a signature was missing from their deed. Although he was notified of this defect, Mr. Pendleton was dissatisfied with the contract and made no effort to obtain the missing signature and cure the defect. Nevertheless, on November 29, 1968, the parties entered into a second written agreement wherein the Commission was given the option of buying an additional, substantially larger, tract of 667 acres at $67.00 per acre. The Commission accepted this option on January 17, 1969.

Sometime after the execution of the second agreement the parties made an oral agreement wherein the Pendletons promised to cure the defect in title affecting the first tract and the Commission promised to pay $67.00 per acre for this tract as well. On May 20, 1969, the Pendletons obtained the missing signature and thereby cured the defect relating to the first tract.

Both written agreements contained the same provision: "If this option is so accepted, then the said Commission shall have such further time as it may deem necessary to cause the titles to be examined, to obtain approval of the titles by the Attorney General, to obtain surveys and to make payment *according to the usual practice.*" [Emphasis added.] The survey was completed on June 9, 1969. On February 10, 1969, an independent attorney in Bradford County, whose name was on a list approved by the Commission, had been asked to search the titles and prepare abstracts for the land in question. On July 16, 1969, the Commission not having received the requested abstracts, the executive director of the Commission wrote the attorney and asked for a progress report. This letter produced no response, but the Commission did nothing further at that time.

On September 2, 1969, the Pendletons wrote a letter to the Commission stating that Mr. Pendleton's health had improved and he now wished to continue farming the land, and that they therefore wished "to withdraw our offer to sell our land at this time." On September 9, after receiving

assurances by telephone from the attorney that the abstracts would be forthcoming shortly, the executive director of the Commission wrote the Pendletons to advise them that they would be held to their contracts. The letter went on to state: "We are momentarily expecting the final abstract so that settlement may be scheduled, and we have made every effort to expedite the matter wherever possible." On the same date, a letter was sent to the attorney emphasizing that he was to complete his work as quickly as possible to avoid further objections from the sellers.

On November 25, the executive director again wrote to the attorney requesting that, if the abstracts were not yet complete, the files be returned so that the work might be reassigned, since "we are now placed in an embarrassing position with the sellers." On December 12, having received no response from the attorney, the executive director arranged for representatives from the Commission to contact the attorney personally at his office to determine what the situation was. On December 22, the executive director received a report that the attorney had been contacted and that he "promised to make every effort to get this job done by the end of the year." On January 22, 1970, still not having received the promised abstracts, the executive director finally relieved the attorney of his duties. He had apparently done no work on them whatsoever. The task was then assigned to the Commission's own full-time abstractor, who completed them in about a month.

Although the abstracts were completed by the end of February, the Commission did not tender the purchase money due on the two contracts until April 30, 1970, and this tender was refused by the Pendletons. The Commission then brought an action in equity seeking specific performance of both contracts in the Court of Common Pleas of Bradford County. After a series of hearings on the complaint, the chancellor concluded the contracts were unenforceable; exceptions were dismissed and the decree made

final.[1] The Commission took a direct appeal to the Commonwealth Court, which reversed and "decreed" specific performance. *Commonwealth v. Pendleton*, 24 Pa.Cmwlth. 601, 356 A.2d 848 (1976). We allowed this appeal by the Pendletons.[2]

Before entering his decree refusing specific performance, the chancellor heard evidence of the "usual practice" both by the Commission and in Bradford County in general with regard to the settlement of contracts for the sale of land; the Pendletons also presented expert testimony, uncontradicted by the Commission, that the value of land in the area, and of the Pendletons' land in particular, had increased enormously within the period between the agreements of sale and the tender by the Commission of the purchase money. The chancellor concluded that the delay by the Commonwealth in this case was not consistent with the usual practice either of the Commission or in Bradford County and grossly exceeded a reasonable time under the circumstances; he further determined that the value of the land had nearly doubled between the time of acceptance and that of tender, that this was a "material change of circumstance," and that "the combination of unreasonable delay and change of circumstance" required a court of equity to deny specific performance.

The Commonwealth Court, on the other hand, reasoned as follows:

"First, if there was delay attributable to the Commonwealth, it was excusable delay. Our review reveals that the delay was primarily caused by the neglect of the local abstractor (hired by the Commonwealth) and the failure of the Pendletons to cure the defective acknowledgment in the deed. As to the delay in curing the defective deed, the Pendletons became aware of the defect on September

1. Although hearings on the complaint were completed on March 16, 1971, the decree nisi was not entered until January 18, 1974, and the final decree was not entered until September 17, 1975. No reasons appear in the record for these delays.

2. The Concerned Citizens of Warren Township have also filed an amicus curiae brief in support of the Pendletons.

4, 1964, and the impediment to title was not removed until May 20, 1969. In April of 1970, the Commonwealth, after having completed the abstract of title, tendered the agreed compensation. So, from September, 1964, to May, 1969, grantors were aware of the defect in title and did not cure it, for whatever reason. The delay from May, 1969, was inconsequential when considering the four and one-half years during which grantors neglected to convey good title. The Commonwealth cannot in these circumstances be said to have caused an inexcusable delay in the consummation of the transaction."

24 Pa.Cmwlth. at 606, 356 A.2d at 850.

We cannot agree with the rationale of the Commonwealth Court. The record clearly indicates that the failure of the Pendletons to cure the defect in title relating to the 24.3-acre tract affected that tract alone and had no bearing on the sale of the 667-acre tract which was negotiated in 1968.[3] Furthermore, the record shows that the parties subsequently made a new agreement whereby the Pendletons were to obtain the missing signature and the Commission was to pay the same amount per acre for the smaller tract that it would pay for the larger tract; the Pendletons fulfilled their part of this new agreement within a very short time, on May 20, 1969, but the Commission failed to tender the purchase money until nearly a year later. Clearly the Commission's subsequent delay was neither caused by nor related to the Pendletons' earlier delay.

It is apparent that the contracts involved instantly were not contracts in which time was of the essence. Nevertheless, it is well settled that even where time is not of the essence, the time for completion is not unlimited and must be reasonable under the circumstances. *Wilcox v. Regester,* 417 Pa. 475, 207 A.2d 817 (1965). The Commission

**3.** The Commission originally maintained it had been agreed that settlement of the two contracts would be simultaneous, so that a defect in title relating to the first tract would necessarily affect the consummation of the second transaction. The Commission now concedes the record does not indicate that the closings were to be simultaneous.

presented evidence that its "usual practice," requiring surveys, abstracts of title, and approval by the attorney general, requires more time than the ordinary land transaction, and that, depending on the complexity of the transaction, the time required between acceptance and closing generally varies between three and twelve months. It urges that the instant transactions, requiring the examination of thirteen chains of title, were unusually complicated. The evidence was uncontradicted, however, that the Commission's own abstractor was able to complete the job from start to finish within a month, and that most of the delay of well over a year was due to the failure of the attorney to do any work on the abstracts at all.

In our view, the chancellor correctly concluded that the Commission must bear the responsibility for the inaction of the attorney it selected. Well before the Pendletons wrote their letter seeking to withdraw their offers of sale, the Commission considered the completion of the abstracts to be overdue. After informing the Pendletons that they would be held to the contracts and assuring them that matters were being expedited and that settlement could be expected shortly, the Commission made only sporadic efforts to hurry the attorney along and apparently never ascertained the true status of the abstracts until the work was finally reassigned more than four months later. Although we assume the Pendletons were not entitled to withdraw from the contracts on September 2, the additional delay by the Commission of nearly eight months in doing what it had committed itself to do expeditiously was clearly unreasonable under the circumstances.[4]   Cf. *Levicoff v. Richard I. Rubin & Co.*, 413 Pa. 134, 196 A.2d 359 (1964).

In *Levy's Estate*, 273 Pa. 148, 151, 116 A. 666, 667 (1922), this Court, quoting from section 408 of Pomeroy's Specific Performance of Contracts (2nd ed.) stated:

" 'The rule may be laid down as general, applying to either the vendor or the vendee, that where there has been a

---

4. No reason whatsoever appears in the record for the delay of two months after the abstracts had been completed.

change of circumstances or relations which render[s] the execution of the contract a hardship to the defendant, and this change grows out of or is accompanied by an unexcused delay on the part of the plaintiff, the change and the delay together will constitute a sufficient ground for denying a specific performance when sought by the one who was thus in default.'"

It is clear that the approximate doubling of value of the property in the interim is such a material circumstance.[5] See *Jones v. Gravity Fill Service Station*, 361 Pa. 198, 64 A.2d 490 (1949); *Rennyson v. Rozell*, 106 Pa. 407 (1884); *Du Bois v. Baum*, 46 Pa. 537 (1864). See generally Annotation, 11 A.L.R.2d 390 (1950). *Schwartz v. Scheel*, 191 Pa.Super. 223, 156 A.2d 356 (1959), relied upon by the Commission, is not to the contrary. There specific performance was decreed despite a lengthy delay in settlement caused by the surveyor hired by the plaintiffs. The court, however, noted that this delay was acquiesced in by the defendants and further indicated that if there had been an additional factor, such as an intervening change in circumstances which could not sufficiently be compensated for by the mere allowance of interest, rescission of the contract would have been justified. See *Morrell v. Broadbent*, 291 Pa. 503, 140 A. 500 (1928). We cannot conclude that the chancellor erred in applying the rule stated in *Levy's Estate* to the circumstances of the instant case.

Accordingly, the order of the Commonwealth Court is reversed, and the decree of the Court of Common Pleas is reinstated. Costs on the Commission.

5. A real estate broker, qualified as an expert witness by the Pendletons, testified that land values in the area had appreciated greatly within the past few years because of the influx of young couples from metropolitan areas seeking summer and vacation homes and that he had offered the Pendletons $50,000.00 for their property in 1968 and now would be willing to offer $100,000.00 for it. The Commission did not contradict this testimony, but now disputes it on the ground that Mr. Pendleton testified he thought his property was worth $100,000.00 in 1968 and $150,000.00 at the time of trial. Clearly it was within the province of the finder of fact to accept the testimony of the expert witness rather than that of Mr. Pendleton.