In re ZERODEC MEGA
CORPORATION,
Debtor.

ZERODEC MEGACORP, INC., Plaintiff,

v.

CHIAPPISI BROTHERS INTERIOR
COMPONENTS, Defendant.

Bankruptcy No. 82–05578G.
Adv. No. 84–1240G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 14, 1985.

Marvin Krasny, Mark J. Packel, Mark A. Kompa, Adelman Lavine Krasny Gold & Levin, Philadelphia, Pa., for debtor/plaintiff, Zerodec Megacorp, Inc.

Paul N. Minkoff, Klovsky, Kuby & Harris, Philadelphia, Pa., Mark M. Roberts, Roberts, Newman & Katz, P.A., Chestnut Hill, Mass., co-counsel for defendant, Chiappisi Bros. Interior Components.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The primary issue, arising under a buyer's counterclaim against the debtor, is whether the debtor failed to deliver goods within a reasonable time, thus giving the purchaser of the goods a cause of action for damages. We find that delivery was timely, thus precluding recovery on this cause of action.

We find the facts of this case as follows: [1] The debtor filed a petition for reorganization under chapter 11 in 1982. The following year the debtor was approached by Chiappisi Brothers Interior Components

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

("Chiappisi") which was a subcontractor on a building project in Massachusetts. The debtor agreed to manufacture column covers for Chiappisi which are hollow cylindrical enclosures for steel support members in the construction project at issue. Each column was designed for manufacture as two semi-circular, half-columns, each looking like a truncated log-canoe. At the job site each half would be joined to its mate with adhesive and caulk. When installed, many of the column covers are bisected by imaginary planes in which are mounted the building windows, and thus the column covers are an integral part of the building's protection against the elements.

Although the contract was let several months earlier, the debtor could not feasibly commence manufacturing until the debtor received exact contract specifications and schematic drawings which did not occur until either July 21, 1983, or "about the middle of August," 1983. With an eye toward the approach of the colder weather of autumn and winter, the debtor met with Chiappisi and the contractor on August 16, 1983, to discuss the expected delivery of the column covers. With optimism running high, the parties drafted at the meeting a proposed delivery schedule for the column covers with the final shipment set for a delivery date of September 13. The parties intended that the dates in the schedule would only be "target dates" rather than guaranteed delivery dates. The parties did not intend that a failure of compliance with the schedule would result in an action for damages. During the meeting the debtor informed Chiappisi that the product could be delivered in compliance with the schedule only if a host of variables proved favorable to the debtor.

As with many who file for bankruptcy, Lady Luck was just a nodding acquaintance to the debtor and the project was beset with delay. Thirteen of the fourteen shipments of column covers were delivered by November 9, 1983, but the last shipment was not delivered until December 19, 1983,

since the debtor did not receive the final specifications for this shipment until November 28, 1983.

Although the proper chronological sequence for installation was the window frame, the column covers and then the windows, the threatened appearance of colder weather without the arrival of the column covers caused Chiappisi to install the windows prior to the columns in an effort to seal the building against the weather. This deviation cost Chiappisi significant amounts of time and money. Other costs were likewise incurred by Chiappisi due to the untimely arrival of the columns. Although these costs were incurred, we find that the debtor's manufacture and delivery time for the columns was reasonable.

Although the debtor had not contracted to sell Chiappisi adhesive, the debtor supplied it for use in joining each half-column to its counterpart. After a short time the adhesive cracked and crazed, thus necessitating Chiappisi's replacement of the joint compound.

Prior to installation many of the column covers arrived at the construction site pitted and asthetically flawed. In this aspect the columns failed to comply with contract specifications but these deficiencies were rectified by Chiappisi on the job site. Chiappisi failed to establish the amount of costs incurred in curing this deficiency.[2]

The first point for consideration is whether the debtor is in breach of its contract with Chiappisi based on the assertion that the debtor failed to deliver the column covers in a timely manner. Under the common law of contracts, where no time for performance is provided in the written instrument, the law implies that it shall be done within a reasonable time. *Field v. Golden Triangle Broad, Inc.*, 451 Pa. 410, 418, 305 A.2d 689 (1973). Even when the parties have expressly agreed to the time of performance in a building contract, "[t]ime is not ordinarily of the essence ...

---

**2.** Chiappisi did introduce evidence on the combined costs of replacing the joint compound and

smoothing surface flaws but no evidence was produced solely on the latter element alone.

that is, [the] failure of the builder to complete his work at the time agreed will not deprive him of the right of action for the price." 6 *Williston on Contracts* § 849, p. 198 (3rd ed. 1962).[3] Attempts to modify an existing contract to incorporate a specific date for performance, must be supported by consideration as must all modifications. *Wilcox v. Regester*, 417 Pa. 475, 207 A.2d 817 (1965).

Article 2 of the Uniform Commercial Code ("the UCC") of Pennsylvania, entitled "Sales," has substantially redefined contract law as to transactions governed by that article. 13 Pa.Cons.Stat.Ann. §§ 2101–2725 (Purdon 1984). Modifications to a contract under Article 2 need not be supported by consideration. 13 Pa.Cons. Stat.Ann. § 2209. Compliance with the statute of frauds provision of 13 Pa.Cons. Stat.Ann. § 2201 is nonetheless required. § 2209(c). Contrariwise, the UCC preserved the common law rule that in the absence of a contract term to the contrary, the time for delivery, shipment or other action shall be a reasonable time. 13 Pa. Cons.Stat. § 2309(a).

■ The applicability of the Article 2 of the UCC is defined at 13 Pa.Cons.Stat.Ann. § 2102:

§ 2102. Scope; certain security and other transactions excluded from division

Unless the context otherwise requires, this division applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction, nor does this division impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers.

13 Pa.Cons.Stat.Ann. § 2102. As applied to the case at bench the debtor was a mere seller of column covers who effected no installation of the sold items. Thus, Article 2 applies to the contract at issue.

■ Although the schedule drafted at the August 16th meeting was incorporated

---

**3.** As also stated in *Williston*:

§ 846. Meaning of Time Being of the Essence. When it is said that time is of the essence, the proper meaning of the phrase is that the performance by one party at the time specified in the contract or within the period specified in the contract is essential in order to enable him to require performance from the other party. It does not mean·that delay will give rise to a right of action against him. A breach of any promise in a contract, whether of vital importance or not, will do that, nor does the phrase mean merely that time is a material matter, but that it is so material that exact compliance with the terms of the contract in this respect is essential to the right to require counter-performance. Even where time is not of the essence, it is generally true that an unreasonable lapse of time may be fatal. Thus, time is almost always in varying degrees material but not so often an essential matter.

It is obvious, as stated in the preceding section, that in any contract one party may make his promise expressly conditional on the exact performance of any agreed condition, and, hence, that performance on a specified day or hour, or before a specified day may be made such a condition. Moreover, though performance at such a time is in terms merely a promise, yet, if the parties also provide that time is of the essence, in those or equivalent words, they thereby agree that a breach of the promise is material or, otherwise expressed, that timely performance is in effect a condition.

Therefore, the first point to be determined in an inquiry whether time is of the essence in a particular case is whether the parties have expressly made it so. And it is only when this question has been decided in the negative that any rule of law other than one of interpretation is called into play. But often the defendant has not made his promise to perform expressly conditional on the plaintiff's performance on a fixed day; he has contented himself with exacting from the plaintiff a promise of performance at that day and has not stated that the time is essential. On an inquiry, then, whether a breach by the plaintiff of his promise to perform at that time excuses the defendant from liability, the justice of imposing such an excuse on constructive condition depends chiefly on two considerations:

1. Is the delay in performance of the plaintiff's promise after part performance, or did he fail to perform at the agreed day at a time when the contract was still wholly executory.

2. Is the nature of the contract, or market conditions, or other significant factors such as to make time of vital importance?

6 *Williston on Contracts*, § 846 (3rd ed. 1962) (footnotes omitted).

**818**

into the contract, we found above that the proposed delivery dates were merely the parties' aspirations, and if delivery was not met by the suggested dates the parties did not intend that a cause of action for damages would lie. In the absence of a legally binding delivery schedule, the debtor was obligated to deliver the goods within a reasonable time. We previously determined that the debtor delivered the goods in a reasonable time even in light of the suggested delivery schedule. We thus conclude that no cause of action lies against the debtor for the alleged untimely delivery of the goods.

■ Chiappisi also claims damages due to the failure of the debtor's adhesive. Although it is clear that the debtor supplied the adhesive and that it did not function properly, it is also clear that the debtor supplied the joint compound gratuitously. Since the debtor was under no contractual duty to supply the adhesive, no breach of contract action may be predicated on its failure. Chiappisi has advanced no other theory for recovery on the adhesive.

■ The next issue is whether we may award damages to Chiappisi due to flaws in the appearance of the column covers. Although we found that the surface of some of the items was marred, Chiappisi failed to prove the measure of the damage. The figure it sought to prove was the alleged damage it suffered due to the surface flaws *and* reapplication of adhesive. No breakdown between the two was provided.

■ The only remaining matter for consideration is the debtor's claim against Chiappisi for the unpaid contract balance of $7,753.75. There is no dispute that this amount is still owing, and since none of Chiappisi's bases for offset are valid, we will enter judgment in favor of the debtor and against Chiappisi in the amount of $7,753.75. Since none of Chiapissi's bases for relief are meritorious, we will deny all relief on its counterclaims.