Purman Estate.

Argued November 24, 1947. Before MAXEY, C. J
LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*David M. Harrison,* in propria persona, with him *Maurice Louik* and *Harrison & Louik,* for appellant in No. 92.

*W. C. Montgomery,* in propria persona, with him *Montgomery & Thompson,* for appellant in No. 93.

*O. R. Hughes,* with him *John C. Bane* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 5, 1948:

These are two appeals by two attorneys-at-law from a decree of an orphans' court refusing to allow them counsel fees out of a share of a distributee.

Testator devised and bequeathed his entire estate to an adult daughter and a minor son, expressly excluding his widow. The widow elected to take against the will.

We need not recite the details of the administration and settlement of the estate. It will suffice to state that friction developed between the daughter and mother. There was litigation over testator's alleged liability on a bond and mortgage indebtedness. The daughter orally employed Walter C. Montgomery, Esq. (one of the appellants) to represent her in the settlement of the estate.

He rendered extensive services. During the course of administration a corporate fiduciary was substituted. Mr. Montgomery and the widow's lawyer jointly represented the substituted fiduciary. David M. Harrison, Esq. was then brought into professional association with Mr. Montgomery, the other appellant. Mr. Harrison alone represented the daughter in matters pertaining to the *personal estate* but acted in conjunction with Mr. Montgomery in *real estate* transactions. Mr. Harrison secured from the daughter a written letter of attorney which provided that Mr. Harrison should ". . . receive 40% of all that is received or recovered by suit or settlement after payment of fees of Walter C. Montgomery, Esq. . . ."

The details concerning the litigation in respect to the administration and settlement of this estate pertaining both to realty and personalty need not be recited. Included were partition suits, exceptions to the accounting by the fiduciary and many other matters. Pending these proceedings, without notice, and disregarding her attorneys and her written and oral obligations to them, the daughter and the widow adjusted their differences. They settled all matters in dispute; the daughter conveyed to the widow real estate reacquired from the county after tax sale, and assigned to Thomas R. Purman, a relative, all her interest in the personal estate. The daughter also executed a general letter of attorney authorizing any attorney to withdraw all actions previously instituted by her counsel.

The corporate fiduciary filed its account of its administration of the estate. At the audit appellants presented their claims for services rendered the daughter, which they contended should be deducted from her distributive share. The auditing judge decided that the claims were neither legal nor equitable assignments, and that they did not constitute liens against the distributive share. He accordingly ruled that the collection of the fees was a matter between the attorneys and their client.

He awarded the fund directly to the distributees of the estate. Each attorney appealed.

Neither attorney secured a valid legal or equitable assignment by the daughter of her distributive share. It was said by Justice KEPHART in *Love, Receiver, v. Clayton et al.,* 287 Pa. 205, 211, 134 A. 422, that a legal assignment is ". . . 'a transfer or setting over of property, or of some right or interest therein, from one person to another, and, unless in some way qualified, it is properly the transfer of one whole interest in an estate, chattel or other thing': Griffey v. New York Cent. Ins. Co., 100 N. Y. 417, 422, 3 N. E. 309, 311; Schaefer's Est., 194 Pa. 420; Johnson's App., 103 Pa. 373." See also: Restatement, Contracts, section 149; 6 C. J. S. 1045, section 1; 4 Amer. Jur. 229, section 2. On the other hand, an equitable assignment is "Any order, writing, or act by the assignor which makes an absolute appropriation of a chose in action or fund to the use of the assignee with the intention to transfer a present interest, although not amounting to a legal assignment. . . ." See: 6 C. J. S. 1101, section 58. In such a situation, the assignor must not retain any control over the fund, any authority to collect, or any power of revocation: 4 Amer. Jur. 288, section 76. The test of whether an agreement to pay or appropriate amounts to an equitable assignment is whether the transfer was of such a character that the fund holder could safely pay, or be compelled to do so, even though he is forbidden to do so by the assignor. In the instant case, Mr. Montgomery merely had an oral contract with the distributee as to his employment. This was not an assignment. Mr. Harrison secured a letter of attorney from his client which constituted him her attorney and fixed his compensation. But here again this did not purport to *assign* the distributive share. The letter of attorney does not show such an intention to make an assignment on the part of the distributee as would constitute an equitable assignment. No such intention is revealed by the testimony.

The distributee maintained control over the fund insofar as she was able to assign her interest in the personal estate to Thomas R. Purman and convey her interest in the realty to the widow, even though such action was taken without the knowledge and consent of her attorney. See: *Wahl v. Strous et al.,* 344 Pa. 402, 25 A. 2d 820; 7 C. J. S. 1070, section 187(b)(3); 5 Amer. Jur. 328, section 116.

Ordinarily the orphans' court has no jurisdiction to determine fees between a distributee and his attorney. Such a situation arises between living parties which can only be settled in an action at law where either party has a constitutional right to trial by jury: *Murphy's Estate,* 258 Pa. 38, 101 A. 935. See also: *Amerling's Estate,* 13 D. & C. 582; *Anderson's Estate,* 51 D. & C. 212.

Neither have the attorneys a *retaining* or *charging* lien upon this distributive share. The nature of such liens is discussed by the present Chief Justice in *Harris's Appeal—Jacoby's Appeal,* 323 Pa. 124, 186 A. 92; See also: Thornton on Attorneys at Law, vol. 2, section 573 et seq.; 7 C. J. S. 1141, section 210 et seq.; 5 Amer. Jur. 387, section 208 et seq. The present distributive share was at no time in the *possession* of either of the attorneys, wherefore no question arises as to their right to *retain.* A *charging* lien of an attorney (where he does not have possession) upon a fund in court is based upon the equitable principle that the attorney primarily aided in producing the fund and to which, by agreement with his client, he is to look for compensation: *Jones et al. v. Pittsburgh,* 157 Pa. Superior Ct. 528, 531, 43 A. 2d 554. In the instant case the attorneys procured no fund for their client. True, they represented her interest and co-operated with the fiduciary in collecting assets and resisting improper claims against the estate. Chief Justice MAXEY said in *Harris's Appeal—Jacoby's Appeal, supra,* page 131: ". . . Counsel for a trustee is entitled to be paid out of the corpus of the estate, *and likewise an*

192

*attorney for a beneficiary who succeeds in establishing the right of the estate to a fund or specific property, or in protecting the trust res"* (emphasis supplied). In that case an attorney represented the *owner* in collecting damages in an eminent domain case and he was allowed fees over the objection of the mortgagee who greatly benefited by the litigation. Here the record is devoid of any proof that the appellants either *created* a fund for distribution or successfully *defended* the estate from depletion because of unjust claims. There is no basis for decreeing a *charging* lien against this distributive share.

The appellants, respected and able members of the bar, performed professional services on behalf of their client, for which she is clearly indebted to them. In the circumstances of this case, however, they must look solely to their client for compensation.

The decree is affirmed at appellants' cost.