## Zubko Estate

*Wallace M. Keely* and *Kirke Bryan*, for accountant.

*Daniel L. Quinlan, Jr., Esq.*, Special Deputy Attorney General for Commonwealth of Pennsylvania, claimant.

*Ostroff, Anderson & Lawler*, for legatees.

TAXIS, P. J., April 29, 1957.—Rosalia Zubko (also known as Rozalia Zubko) died March 13, 1953, leaving a will dated February 14, 1953, in which she gave residue to her four sisters in equal shares. Union National Bank and Trust Company of Souderton was appointed executor and filed its account on September 30, 1953, which was audited on November 13, 1953. On February 26, 1954, this court awarded the balance, namely, $21,422.71 to the four sisters as provided by the will.

In the petition for adjudication, accountant advises the court that the residuary legatees named in the will were living in Poland and did not know whether they were living or dead and, if deceased, whether issue survived. It is presently conceded that these four sisters lived in Poland and are behind the Russian "Iron Curtain". It is also agreed that the award made to one sister, Mary, lapsed by reason of her predeceasing the testatrix, having died on March 5, 1943, unmarried and without issue. The award, therefore, instead of being made to four sisters should have been made to three sisters. Furthermore, the decree of distribution is also in conflict with section 2 of the Act of July 28, 1953, P. L. 674.[1] That statute provides:

"Whenever it shall appear to the court that if distribution were made a beneficiary would not have the actual benefit, use, enjoyment or control of the money . . . the court shall have the power and authority to direct the fiduciary (a) to make payment of the share of such beneficiary at such times and in such manner

---

[1] The Act of 1953, P. L. 674, is now incorporated in the Fiduciaries Act of April 18, 1949, P. L. 512, as amended, as sec. 737.

and amounts as the court may deem proper, or (b) to withhold distribution of the share of such beneficiary, convert it to cash, and pay it through the Department of Revenue into the State Treasury without escheat."

No distribution of this residuary balance has as yet been made by the executor. On January 24, 1957, the executor presented this petition for review alleging that subsequent to the decree of distribution dated February 26, 1954, notice was given to the family of decedent by letters sent to Lvov, in Russia; that Wolf, Popper, Ross, Wolf and Jones, Esqs., a New York law firm, notified the executor that they represent the residuary legatees named in the will; that thereafter Isidor Ostroff, Esq., of the Philadelphia bar, also advised the executor that he, together with the New York law firm, represents the residuary legatees.

Subsequently, Mr. Ostroff tendered to the executor satisfactions of award as to three of the named beneficiaries and asked that pursuant to powers of attorney given to Wolf, Popper, Ross, Wolf and Jones by the three residuary legatees, their distributive shares be delivered to him as the appointed substitute of the designated attorneys-in-fact. He also submitted a death certificate and affidavits showing that the fourth sister, Mary, had predeceased testator, leaving no issue or heirs to survive her.

The powers of attorney presented by Mr. Ostroff were duly authenticated by the United States Consul General at Moscow, Russia, wherein the legatees designated their attorneys and authorized them to obtain legal counsel and to pay all charges and disbursements incurred in the representation.

The accountant has presented this petition to review the adjudication, seeking instructions as to how it should comply, if at all, with the decree of distribution of February 24, 1954, in light of this "Iron Curtain" statute.

The prayer of the petition is that the court will "enter a decree permitting petitioner to pay out the moneys in its hands, and be discharged of its responsibility as executor of the said estate".

At the hearing on February 15, 1957, Mr. Ostroff appeared on behalf of the three legatees and suggested one of two alternative methods of distribution: (1) That an award be made to Isidor Ostroff, Esq., substituted attorney for the legatees under the powers of attorney introduced into evidence, which would discharge the executor and close out the estate (cf. Volenski Estate, 6 Fiduc. Rep. 155) ; or, (2) that the executor be directed to pay to a trustee, to be named for the legatees, the distributive share to which each of the legatees is entitled, and that the trustee be directed to make payments to each of the legatees in the sum of $75 per month out of income and principal until the fund is exhausted, or to pay sums on further order of this court at the request of any of the beneficiaries.

The suggestions that the award be made to the substituted attorney for these legatees is rejected. This suggested device delegates to the attorney the responsibility of determining whether a beneficiary is enjoying the actual benefit, use or control of the award. It is the court's duty to supervise the administration of any awards and make certain that these funds are not confiscated by the Russian government and that these beneficiaries receive the actual use, benefit and enjoyment of their inheritance. To award these funds directly to the substituted attorney for these legatees without any control over subsequent distribution would ignore the design of the statute. See Demczuck Estate, 8 D. & C. 2d 462, wherein Judge Biester rejected this suggested technique. Cf. Sobko Estate, 88 D. & C. 76; Hryszko Estate, 6 Fiduc. Rep. 457.

Counsel for the legatees have called to the attention of the court several unreported Pennsylvania cases

where distributions were made directly to attorneys-in-fact for heirs residing behind the "Iron Curtain". In Stolarczuk Estate, Orphans' Court of Dauphin County, no. 512 of 1952, the court, on May 24, 1956, ordered the payment of $6,189.48 to the Chief of the Consular Division of the Polish Embassy as attorney-in-fact for the five heirs, all Polish nationals; and in Kowatch Estate, Orphans' Court of Luzerne County, no. 761 of 1953, the court also directed the payment of $15,406.01 to a New York law firm as attorneys-in-fact for heirs, in Poland. However, these orders were not accompanied by opinions.[2]

The suggestion that a trustee be named and make monthly distributions under the supervision of the court is a practical, fair and equitable method to enable the court to carry out its duties. This trust device was adopted recently in Dopierala Estate, 7 Fiduc. Rep. 262 (O. C., Erie) upon a showing that the beneficiary actually received the monthly payment and her additional request that the shipments or the money be continued.

In the present case, the Commonwealth opposes an award to a trustee contending that the Act of 1953 reflects the policy of the legislature, the whole purpose of which is to have the Commonwealth hold this money as custodian for these foreign beneficiaries. The Commonwealth asks that the residue be awarded into the State Treasury without escheat through the Department of Revenue.

---

[2] Several New York and New Jersey cases were cited wherein courts, under statutes and rules of court alleged to be similar to Pennsylvania's "Iron Curtain" statute, awarded funds to attorneys-in-fact for Russian, Czechoslovakian, and Hungarian heirs. See Pipish Estate, Surrogate's Court in County of Monroe, June 15, 1954; Kowalazak Estate, Surrogate's Court in County of Monroe, November 9, 1954; Majernik Estate, Burlington County Court, probate division, docket no. 9510A-1951; Berger Estate, Essex County Court, probate division, docket no. 6667C; Hoffenberg Estate, Essex County Court, probate division, June 3, 1954.

As Judge Roberts adequately stated in Dopierala Estate, supra: "This, we feel, can best be accomplished by appointing a trustee for her, who will, under the supervision of the court, invest her funds and make available to her the benefits of her estate, in such manner as may best suit her circumstances. This temporary protective action is exclusively for the benefit of the beneficiary, and distribution will be made directly to her, just as soon as the court is satisfied that she will enjoy the actual benefit, use and control of the funds awarded to her."

One final matter need be determined. Isidor Ostroff, Esq., has requested that the court award an attorney's fee to him pursuant to an agreement with the attorney-in-fact for these beneficiaries. I conclude, however, that the orphans' court has no jurisdiction to determine fees between the distributee and his attorney and, therefore, the allowance is denied; Cf. Purman Estate, 358 Pa. 187; Anderson's Estate, 51 D. & C. 212. Hunter O. C., Com. Bk., page 72, §4(a).

### Decree

And now, to wit, April 29, 1957, it is ordered, adjudged and decreed as follows:

1. The adjudication of February 26, 1954, is herewith opened and the decree of distribution modified to provide that the distributive shares of Anna Ivanovna Goryn, Ekaterina Ivanovna Rybak, and Francishka Ivanovna Vowk, are awarded for their benefit to a trustee herein named.

2. Montgomery Norristown Bank and Trust Company is hereby appointed trustee of Anna Ivanovna Goryn, Ekaterina Ivanovna Rybak, and Francishka Ivanovna Vowk, and the net balance for distribution of $21,422.71 is awarded to the trustee to hold in three separate accounts for further administration and accounting. The trustee is authorized to deposit the funds in three savings accounts in its institution.

3. The trustee is authorized to withdraw from each of the three accounts not more than $75 in each 60-day period for the purchase of packages or parcels of necessities for Anna Ivanovna Goryn, Ekaterina Ivanovna Rybak, and Francishka Ivanovna Vowk, and for transmission of same by the most reliable and best means available. The second and subsequent packages or moneys are to be bought and transmitted only upon acknowledgment of receipt of the preceding package or parcel or money by the beneficiary, and upon her request that such shipments be continued. The authority granted the trustee is to continue for six months unless sooner terminated by order of court of discontinuance requested by the beneficiaries.

4. The trustee is directed to advise the court of any change in circumstances concerning the beneficiaries coming to its knowledge which would make advisable modification of this order.