## Rieffel v. Darlington

*Oscar S. Bortner*, for plaintiffs.

*William M. Power* and *Emanuel H. Klein*, for defendant.

SATTERTHWAITE, J., January 2, 1959—The key problem now before the court in these proceedings is the jurisdiction of the court of common pleas, sitting in equity, to adjudicate and enforce a family settlement providing for the distribution of the estate of a decedent. The question arises on preliminary objections to plaintiffs' complaint which, notwithstanding

that the estate is not yet administered, in effect seeks specific performance of the agreement. From the complaint the following facts appear:

Decedent died on May 30, 1956, a resident of this county, leaving him surviving four children; two daughters and a son who are the plaintiffs herein, and another daughter who is the defendant. On June 2, 1956, it is alleged, the four children met and discussed decedent's will dated May 10, 1956, by which he bequeathed specified shares of stock to his three daughters, respectively, divided his residuary estate among all four children equally and created certain trusts as to the interests given his daughter Martha B. Darlington, defendant herein, during coverture, the same to terminate and become the absolute property of said daughter upon the dissolution of her marriage by the death of her husband or otherwise. As a result of such conference, the complaint further avers, plaintiffs and defendant "entered into a family agreement for the purpose of effecting the distribution of the estate" in a manner thought to be more equitable than the testamentary plan, whereby, "conditioned on the divestment of any interest of the children of the Defendant, Martha B. Darlington, to which they became entitled under the provisions of the said Will by reason of their mother's coverture, the net estate of the decedent, William Bush, after payment of the costs of administration and inheritance taxes, if any there be, would be distributed" on specified percentages among the four children, 44 percent (and in any event not less than $60,000) to defendant, and the balance in designated portions to plaintiffs. A copy of an alleged written memorandum of this agreement is attached as an exhibit.

The complaint further sets forth that thereafter on September 14, 1956, defendant was divorced from her

husband, whereby "her children became divested of any interest" under the will; that on September 18, 1956, she caused the will to be probated and was granted letters testamentary thereon; that on September 29, 1956, she "repudiated the said family agreement and made known to the parties hereto her intention to dishonor said agreement and her refusal to comply with the terms of the said agreement"; that on June 17, 1957, plaintiffs appealed to the orphans' court of this county from the probate of the will on the ground that decedent lacked testamentary capacity at the time of his execution thereof; that notwithstanding they might take larger shares of the estate if an intestacy resulted from their successful prosecution of the will contest, plaintiffs are ready, able and willing to comply with the family settlement and desire that defendant do likewise, but that defendant, by reason of her actions and expressed refusal to abide by the same, "has practiced a fraud upon" plaintiffs.

The prayer for relief is in the alternative, conditioned upon the outcome of the will contest, asking that the court direct distribution of the estate in accordance with the agreement, either by defendant as executrix if the appeal be dismissed, or by defendant in her individual capacity if the contest be successful in setting the will aside.

Defendant's preliminary objections must be sustained and the within proceedings dismissed. The court of common pleas simply does not have jurisdiction. Section 301 of the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.301, expressly provides:

"The orphans' court shall have *exclusive* jurisdiction of:

"(1) Decedents' estates. The administration and *distribution* of the real and personal property of decedents' estates . . . ." (Italics supplied.)

That the power of the orphans' court under this language extends to situations involving matters of distribution under a family agreement is settled by Way Estate, 379 Pa. 421, decided under the similar language of section 9(e) of the Orphans' Court Act of June 7, 1917, P. L. 363, and the rationale thereof is equally applicable here. Just as did the appellant in that case, plaintiffs in the instant proceedings completely ignore the fact that the alleged agreement relates to *distribution* of the estate and is not a mere contract dispute between living persons without an express or implied assignment of a distributive share. The following excerpts from the opinion of Justice Stearne in the Way case are appropriate to the instant case as well:

"Appellant fails to distinguish between agreements executed by all parties in interest in a decedent's estate relating to its DISTRIBUTION, and where the dispute is between a distributee and a living person involving *no* question of distribution of *decedent's estate*. Such latter controversy between living persons, being foreign to a *distribution* of the decedent's estate, must necessarily be relegated to the court of common pleas": Page 424.

"Where a distributee makes a contract or deals with *his own distributive share*, the Orphans' Court has jurisdiction to pass on the validity of the contract or transfer if the distributee, expressly or impliedly, has *assigned* such distributive interest. The jurisdiction is sustained because by the assignment the *distribution* of decedent's estate becomes involved": Page 434.

"Since the agreement here provides for a *distribution* of decedent's estate, no *assignment* is required in order to give the Orphans' Court jurisdiction. Had

an assignment been required, such assignment is necessarily *implied* because of the language used in the agreement. . . .

"When a distributee makes a contract affecting his *individual* distributive share *not involving distribution of a decedent's estate* with no express or implied *assignment*, the Orphans' Court has no jurisdiction to settle such a dispute between the contracting living parties", [citing and explaining Purman Estate, 358 Pa. 187, which held that the orphans' court lacked power to determine fees between a distributee and his attorney] : Page 435.

Plaintiffs alternatively concede arguendo that under the Way case the orphans' court might have jurisdiction, but, they further argue, this conclusion does not necessarily exclude *concurrent* jurisdiction in the common pleas. There is likewise no merit to this position. It is clear that the Way case and others of a similar import, although decided under the 1917 Act which did not in so many words provide that the statutory authority of the orphans' court in the distribution of decedents' estates should be exclusive, nevertheless made it implicit in their treatment of the problems that such result should obtain. In any event, all possible doubt as to the exclusiveness of such jurisdiction is completely removed by the language of the 1951 Act, quoted supra.

Moreover, defendant is also correct that the within proceedings in equity will not lie because of the adequacy of  plaintiffs' remedy at law, in this case through the procedures available in the orphans' court. Absolutely no legally recognizable reason exists for this unnecessary duplication of proceedings. Since the alleged agreement is operative only as to the *net* estate of decedent after administration expenses and taxes

(and, it might also be added, possible claims of creditors), and since the administration of the estate cannot be completed until the still-pending will contest be adjudicated or otherwise disposed of, we totally fail to understand plaintiffs' contention that equity will provide a more efficient and expeditious disposition of the matters in controversy between the parties hereto.

Even could equity act before the estate be completely administered, it seems apparent that the only occasion for such an extraordinary procedure would be either to harass defendant or to require this court to prejudge and render an advisory opinion on the merits of the family settlement, to be used, if successful, as a tactical advantage in a possibly negotiated disposition of the will case, and with no risk to their position in the latter proceeding, to which they could fall back in any event if they be unsuccessful herein. While we must admire the ingenuity of counsel in such maneuvering to provide a "hedge" or additional protection for his clients' position, we must also recognize that neither of these purposes provides any cause for sympathy with plaintiffs' present contentions or, more importantly, any legal justification for the within proceedings in equity.

## Order

And now, January 2, 1959, for the reasons stated in the foregoing opinion, defendant's preliminary objections numbered 1 and 6 are hereby sustained, and plaintiffs' complaint is hereby dismissed and judgment entered herein in favor of defendant, without prejudice, however, to the substantive merits of the matters therein set forth which may hereafter be litigated in a proper forum. Costs to be paid by plaintiffs.