## Dub Estate

*Herbert L. Floum*, for accountant.

*Ostroff & Lawler*, for exceptants.

*Herbert S. Salus, Jr.* and *Melvin E. Soll*, Special Assistant Attorneys General, contra.

### ADJUDICATION

BOLGER, J., September 8, 1966.—This decedent died on June 15, 1963, intestate. He was married at the time of his death and was survived by his wife, Fanny Dub, and one daughter, Rosalie Poliak, a/k/a Faiga Feizovna Polak.

Letters of administration were granted accountant on June 20, 1963; proof of publication of the grant of same was submitted and is annexed hereto. . . .

At the audit, testimony was presented which established to the satisfaction of the court and of all parties in interest the identity and whereabouts of Faiga Feizovna Polak, a daughter of decedent, and, with the

exception of accountant, decedent's only next of kin. Since, however, she is a resident of the U.S.S.R., her share will be awarded to the Commonwealth under the provisions of the Act of July 28, 1953, P. L. 674, 20 PS §§1155-1159, because she would not have the use, benefit, enjoyment and control of her share of this estate should it be awarded directly to her.

This case is one of many wherein the person entitled to a share of a decedent's estate is identified and his whereabouts ascertained, but in which his share is awarded to the Commonwealth to be held at interest under the Act of July 28, 1953, P. L. 674, 20 PS §§1155-1159, because it is found that such person will not have the use, benefit, enjoyment and control of the funds so awarded. The Act of 1953 is called the "Iron Curtain Act". This is a misnomer, because it is of general application and is not restricted in its operation to Communist-controlled countries. However, in the overwhelming majority of cases where it is found that a person otherwise entitled to distribution would not have the actual enjoyment and control of the funds, that person is, in fact, a resident of a Communist country.

This type of case frequently gives rise to a problem which is a source of much trouble to the court, i.e., when an award to the Commonwealth is made because it is found that the distributee would not have use and control of the funds, what fee, if any, should be awarded to counsel for that distributee? That counsel has rendered valuable services to the distributee cannot be denied, since establishment of identity and location is the sine qua non of an award under the 1953 act. It is clear that when counsel for an alleged heir fails to establish identity and/or location, and, as a consequence, an award is made to the Commonwealth under section 1314 of The Fiscal Code of April 9, 1929, P. L. 343, counsel is not entitled to a fee out

of the estate: Martinzik Estate, 25 D. & C. 2d 701 (O. C. Phila. 1962).

The auditing judge is of the opinion and rules that no fees can be paid out of the estate to counsel for an heir when that heir's share in an estate is ordered to be paid into the State treasury under the Act of July 28, 1953.

In the first instance, in this type of case the finding that the distributee will not have the use, benefit, enjoyment and control of the funds stems from the fact that the distributee is a resident of a country which is under the heel of a political, social and economic dictatorship, Communist or otherwise, where conditions exist which militate against such person's possession of the fund: Zupko Estate, 15 D. & C. 2d 442 (O. C. Phila. 1958). With this background in mind, there is great danger that the resident of such a country, in executing the power of attorney, by which authority local counsel appears on his behalf, is not acting freely; that the counsel who appears is not selected freely. This danger is pervasive even in situations where the power of attorney is duly certified by an American consular official, because the donor of the power rarely, if ever, appears personally before the consul and executes the power in his presence. Even if the power was executed before an American consular official, there is no certainty that the power was freely given because it is impossible for the consul or the court to know what pressures or threats were brought to bear upon the donor. In the usual case, the donor executes the power before a local notary, whose authority to authenticate the power of attorney is, in turn, authenticated by a higher official. The American consul then certifies the authority of the higher official to authenticate the authority of the local notary. In that case, the danger of coercion, threats and pressures is greatly increased, and it becomes

more and more possible that the choice of the donee of the power was not freely made. Thus, in view of the uncertainty surrounding the voluntariness of the act, the court is reluctant to allow fees to counsel whose selection may not have been freely made.

An equally important reason for denying counsel fees in this kind of case is the fact that when an award is made to the Commonwealth on behalf of the distributee, the fund is placed, in effect, under a disability. While in the State treasury, it is not freely transferable or assignable. Cf. Kurz Estate, 32 D. & C. 2d 453 (O. C. Phila. 1964), and the cases cited therein, where an assignment by an heir was not recognized because of the danger of evasion of the protective restrictions of the Act of July 28, 1953. By allowing a fee to the attorney-in-fact under these circumstances, the court would be permitting a power of attorney to operate as a partial assignment of that which would not otherwise be assignable. The court should not and will not place form above substance and permit an assignment to be made under the guise of a power of attorney.

There is a further reason why a fee should not be allowed in this type of case. Counsel for an heir who is retained by the heir should look directly to the person who hired him for his fees. The fee for services rendered by an attorney is a debt of the person for whom they are rendered. This is the normal arrangement in any attorney-client relationship. The fund out of which fees are sought in this type of case is not available for any other debts of the heir; there is no reason why such funds should be available for this particular debt. Nor is the fund subject to an attorney's charging lien. A charging lien is based upon the equitable principle that the attorney primarily aided in producing the fund to which, by agreement with his client, he is to look for compensation. In this type of

case, the attorney produces no fund, but only represents an heir's interest in a fund: Purman Estate, 358 Pa. 187 (1948). See also Hurst Estate, 29 D. & C. 2d 361 (O. C. Montg., 1961), affirmed per curiam, 410 Pa. 104 (1963), where it was held that the court has no jurisdiction to determine fees between an attorney and his client unless the attorney has a specific interest in or lien on the fund which legally raises him to the rank of distributee. See also Zubko Estate, 12 D. & C. 2d 557 (O. C. Montg., 1957).

For all of the foregoing reasons, no allowance for counsel fees to counsel for the daughter of decedent will be made. What has been said with respect to fees is inapplicable in cases where counsel for an heir or heirs renders special services to the estate and to the court by way of preservation of the estate or by way of bringing the estate before the court.

There was no objection to the account which shows a balance of principal of $5,797.10, which, composed of cash as indicated, together with income received since the filing of the account, if any, and subject to such transfer inheritance tax as may be found to be due, is awarded as follows: one half thereof to Fanny Dub and one half thereof to Rosalie Poliak, a/k/a Faiga Feizovna Polak, to be paid to the State treasury under the provisions of the Act of July 28, 1953, as aforesaid.

Leave is hereby granted accountant to make all necessary transfers and assignments.

And now, September 8, 1966, the account is confirmed nisi.

### Opinion sur Exceptions to Adjudication

Klein, P. J., December 9, 1966.—George Dub died intestate on June 15, 1963, a resident of Philadelphia. He left to survive him his wife, also a resident of Philadelphia, and a daughter, who lives in Russia.

A power of attorney, stated to have been executed by

the daughter, has been made a part of the record. Messrs. Wolf, Popper, Ross, Wolf and Jones, attorneys at law, with offices in New York City, were designated as attorneys in this instrument with right to engage legal counsel to represent them. The Philadelphia firm of Ostroff and Lawler appeared for the New York law firm on behalf of the daughter by virtue of this power of attorney.

At the audit, testimony was presented which satisfied Judge Bolger, the auditing judge, that claimant was, in fact, decedent's daughter and that she was a resident of the U.S.S.R. The auditing judge, accordingly, awarded her share of the estate to the Commonwealth of Pennsylvania under the provisions of the so-called "Iron Curtain Act" of July 28, 1953, P. L. 674, 20 PS §§1155-1159, because he concluded that she would not have the use, benefit, enjoyment or control of the fund if it were awarded directly to her.

In a comprehensive adjudication, the auditing judge also refused to allow a counsel fee to Ostroff and Lawler from the distributive share of the daughter. Exceptions to this ruling are now before us.

The law is well settled in Pennsylvania that the orphans' court has no jurisdiction to decide the amount or the manner in which counsel fees shall be paid by a distributee of a decedent's estate. In Purman Estate, 358 Pa. 187, 191 (1948), Justice Stearne said:

"Ordinarily the orphans' court has no jurisdiction to determine fees between a distributee and his attorney. Such a situation arises between living parties which can only be settled in an action at law where either party has a constitutional right to trial by jury: Murphy's Estate, 258 Pa. 38, 101 A. 935. See also: Amerling's Estate, 13 D. & C. 582; Anderson's Estate, 51 D. & C. 212".

See also Way Estate, 379 Pa. 421, 435 (1954); Randall Estate, 385 Pa. 252 (1956).

Exceptants contend that the Supreme Court "impliedly reversed these cases" in Ostroff v. Yaslyk, 419 Pa. 183 (1965), and that "the principle of *stare decisis* required the Auditing Judge to follow the Yaslyk opinion" and allow them a counsel fee. In our opinion, these contentions are completely without merit.

In Yaslyk, the law firm of Ostroff and Lawler also tried, unsuccessfully, to compel payment of counsel fees for services rendered by them for distributees residing in Russia. In that case, as in the present case, it was established that a relative, a brother entitled to the intestate share of the estate of a local decedent, resided in Russia. His distributive share was also awarded to the Commonwealth of Pennsylvania under the provisions of the "Iron Curtain Act", supra.

Shortly after the orphans' court adjudication, Ostroff and Lawler insituted an action in foreign attachment against the brother in Russia, in the County Court of Philadelphia, for 25 percent of the award made to him as the fee for their services. The dismissal of the complaint in the foreign attachment proceedings was affirmed by the Supreme Court.

We have read Mr. Justice Roberts' opinion in Yaslyk with great care, and fail to find anything therein which in any way modifies or abrogates the rule enunciated in Purman's Estate, supra. What the Supreme Court did in this case was merely to recognize the exclusive jurisdiction of the orphans' court with respect to the administration and distribution of decedents' estates, in accordance with section 301 (1) of the Orphans' Court Act of August 10, 1951, P. L. 1163, and to reaffirm the principle that no other court has judicial power to act in this area of the law.

Even if we were to assume, arguendo, that exceptants are right and we have the authority they say is vested in us, we would not be disposed to award

counsel fees to attorneys appearing for the nationals of Communist-dominated nations, so long as prevailing conditions make it impossible for such distributees to receive the full use, benefit, enjoyment or control of funds awarded by our courts in the distribution of decedents' estates. Too much uncertainty exists with respect to the possibility of the exercise of coercion and duress in obtaining the authorization under which counsel are acting.

It appears to be quite possible that, under the Russian system of legal administration, decedent's daughter had no free choice in the selection of counsel or in the determination of the amount of costs and fees she would be obliged to pay for their services. She should be afforded an opportunity to challenge the manner in which counsel were selected and appointed and the fees she is being asked to pay when it has been fully established that she is acting of her own free will, without restraint.

The circumstances of this case and of other cases of like nature suggest that Ostroff and Lawler and the New York firm of Wolf, Popper, Ross, Wolf and Jones are, in fact, acting as representatives of the Russian Government, and not of the individual distributee. Perhaps, they should look to and be paid by the government of Russia, just as attorneys for our Federal, State and local governments are paid in these matters.

The difficulties where distributees of estates administered in Pennsylvania are residents of Communist-dominated countries are most complex and have troubled our courts since Communism has dominated Eastern Europe. We have been instructed by our Supreme Court that we may take judicial notice of the fact that citizens of "police states" are deprived of the rights so cherished in our Western democracies: Belemecich Estate, 411 Pa. 506, 510 (1963).

Pennsylvania has long recognized the rights of foreign distributees to receive property of a decedent. See Act of February 23, 1791, 68 PS §§22 and 23. However, the legislature, as well as the courts, are concerned that when awards are made to foreign distributees, they will actually be received by them and that, if received, they will have the full use, benefit, enjoyment or control thereof. Hence, the so-called "Iron Curtain Act" of 1953, supra. This statute is essentially custodial in nature; not confiscatory. See Wanson Estate, 419 Pa. 109 (1965).

Foreign countries can be divided generally into two categories with respect to transmittance of inheritances by American courts:* (1) Those which have treaties with the United States which insure that the beneficiaries will actually, and not only technically or figuratively, receive the amounts due them; and (2) those which do not have such treaties. Yugoslavia, for instance, is in the first group by reason of a treaty made in 1881 with the Kingdom of Serbia. In such cases, a State is without the power to enact legislation affecting the ultimate rights of the distributees who are the nationals of such countries. State policies as to the rights of aliens to inherit must yield, under the supremacy clause of the Constitution, to overriding Federal treaties and conflicting arrangements. See Kolovrat v. Oregon, 366 U. S. 187 (1960). Problems rarely arise in these cases concerning counsel fees because all arrangements are made privately between the distributee and counsel, either personally or through their governmental representatives.

In the absence of such a treaty, a State may adopt legislation to insure the ultimate receipt and enjoyment of an award made by its courts. The problem,

*For an interesting discussion of this subject, see Distribution—"Iron Curtain Act"—Effect of Treaties, Fiduciary Review, February 1964.

however, involves national policies of the highest order. Conditions within such countries are often in a constant state of flux, as a result of which our relations with the Communist bloc of nations change from year to year. In 1963, the Orphans' Court of Philadelphia adopted local rule no. 69.6, which provides that when a distributee whose identity has been proved is a resident of a country in which the Secretary of the Treasury of the United States of America has determined, pursuant to the authority granted him under section 5 of the Public Law No. 828, approved October 9, 1940, 54 Stat. 1086, 1087; 31 U.S.C.A. §127, or any amendment or supplement thereto, that postal, transportation, or banking facilities in general, or local conditions are such that there is not a reasonable assurance that the payee of any check or warrant drawn against funds of the United States of America, or any agency or instrumentality thereof, will actually receive the check or warrant and be able to negotiate the same for full value, such determination shall be deemed prima facie evidence that the beneficiary would not have the actual benefit, use, enjoyment or control of the money or other property distributed to him by a fiduciary and, in such case, the burden of proof shall rest upon any party who alleges otherwise.

In practice, the rule has resulted in our refusal, in all but the most exceptional cases, to authorize the transmittal of funds to distributees in countries on the proscribed list of the Secretary of Treasury. Under this rule, we look for guidance in matters pertaining to conditions in foreign countries to the official of the United States Government who is charged by the Congress with the responsibility of determining the conditions existing in such countries. See Soter Estate, 34 D. & C. 2d 1 (1964). This is also the procedure adopted in the neighboring states of New York and

New Jersey. See Matter of Braier, 305 N. Y. 148 (1953); Estate of Markewitsh, 62 N. J. Super. 407 (1960). Certainly, the Federal government is in a better position than the judges of local courts to determine whether a foreign distributee would have the use and benefit of funds or property if forwarded to him.

Since this rule has been in operation, Bulgaria, Roumania and Poland have been removed from the treasury list, and funds are being transmitted to distributees living in these countries. In such cases, provision has been made for payment of fees to American attorneys appearing for such distributees.

We are hopeful that Hungary, Czechoslovakia and, perhaps, even Russia will be removed from the list in the not-too-distant future, as conditions within these nations improve and the "Cold War" they are waging with the United States thaws. If and when this day comes, we are confident that little difficulty will arise in solving the problem of compensation for counsel. Until that time arrives, we expect to follow our present practice of not permitting diminution of the funds transmitted to the Commonwealth under the 1953 act for fees claimed by counsel for the foreign distributees.

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.