## Mallalieu Estate

*Michael B. Kean* and *Katherine S. Brigham,* for petitioners.

*R. Kerry Kalmbach,* for respondent.

WOOD, *J.,* July 3, 1989 — Something of the background of this matter needs to be explained before I can intelligently deal with the request for counsel fees that I have in front of me.

On January 26, 1989, Larry Pierce, nephew of Dorothy Mallalieu, applied to this court to have himself appointed her guardian. The motivating cause for that application was not that she had assets which were being wasted, but that she was being ill-treated by her husband, and needed to be placed in a nursing home and rescued from her husband's rather unusual notions of nursing care.

Following a hearing on the appointment of a temporary guardian, I appointed Mr. Pierce in that capacity, and he arranged for Mrs. Mallalieu to be put in a nursing home. We then commenced hearings on the appointment of a permanent guardian, but prior to the completion of those hearings, all the parties generally agreed that Mr. Mallalieu could be appointed guardian of Mrs. Mallalieu's estate, and that Winifred Moran Sebastian, Esq., could be appointed guardian of her person. General agreement prevailed that Mrs. Mallalieu should remain in

a nursing home, so that the immediate objective of the Pierce application was achieved.

The matter of guardianship having been settled, Michael B. Kean, Esq. and Katherine S. Brigham, Esq., who had acted as attorneys for Mr. Pierce throughout the proceedings, then applied to me for payment of their attorneys' fees, either out of Mrs. Mallalieu's estate, or out of other such funds as may be available. Mr. Mallalieu filed an informal accounting indicating that Mrs. Mallalieu's sole and separate estate amounted to less than $2,000. He also indicated that he and she by the entireties owned another $82,000 worth of assets. The total amount sought by petitioners by way of attorneys' fees and costs is $9,851.25. I am therefore faced with what I consider to be three circles, or levels, of questions:

(1) May I order the payment of petitioner's legal fees out of Mrs. Mallalieu's sole assets?

(2) If those assets are insufficient, may I then order the payment of those attorneys' fees out of assets which she owns jointly with her husband?

(3) As a sort of corollary, may I oblige the husband to pay those attorneys' fees out of his sole assets, on the ground that such fees constitute "necessaries"?

Before getting to a discussion of these questions, two subjects may quickly be laid to rest: first, Mr. Mallalieu's attorney made the novel argument that Mr. Pierce was ineligible even to bring a petition to appoint a guardian, because he was named executor of Mrs. Mallalieu's estate in her will. This is an argument that I had never heard before. Section 5511 of the Probate, Estate and Fiduciaries Code (PEF), 20 Pa.C.S. §5511 says that "any person interested in the alleged incompetent's welfare"

may petition for the appointment of a guardian. I therefore reject that argument.

The question was also raised of the jurisdiction of the Orphans' Court to order Mr. Mallalieu to do anything. However, he has voluntarily appeared as a party in these proceedings and is named as a respondent to the petition for counsel fees. I therefore think that I have the *power* to make orders regarding his obligation to pay attorneys' fees, although whether I should use that power is another question altogether.

Turning first, then, to the question of whether I can order the payment of attorneys' fees out of Mrs. Mallalieu's estate: I must confess that this is a practice which I routinely follow. If someone petitions for the appointment of a guardian, and that petition is successful, then I had routinely been in the practice of ordering the payment of the petitioner's fees out of the estate, on the principle that the actions of the petitioner benefited the estate: *Carver Estate,* 5 D.&C. 3d 743, 747 (1977).* I see no reason to abandon that practice at this time.

However, as will be immediately evident from comparing the size of the estate with the size of the fees requested, that is not a satisfactory answer in this case. Certainly, I would not want to consume the entire estate with attorneys' fees. All the cases indicate that there must be some proportionality between fees paid and the size of the estate: see, e.g., *La Rocca Estate,* 431 Pa. 542, 546, 246 A.2d 337, 339 (1968). Therefore, I must explore the

---

* While this practice has not found favor with some courts, see, e.g., *La Paglia Estate,* 7 Pa. Fiduc. 2d 47 (O.C. Allegheny County, 1986), I consider it a matter of practical necessity to pay the petitioner's counsel fees out of the estate. To do otherwise would discourage petitioners from pursuing guardianship petitions on behalf of incompetents.

question of whether or not there are other assets available to these attorney-petitioners for payments of their fees.

I have looked in vain for cases which even discuss the question of whether or not entireties property can be made available for the payment of attorneys' fees, if one of the tenants by the entireties is declared incompetent. I suspect that there are probably no cases on the subject, because the situation is not only novel, but it probably never occurred to anybody before to make such a request. It is hornbook law that entireties property is insulated from the demands of creditors of one of the tenants by the entireties: see, e.g., *Stop 35 Inc. v. Haines*, 374 Pa. Super. 604, 543 A.2d 1133 (1988). Although, as I have noted, Mr. Mallalieu is subject to the authority of this court, I am reluctant to rule that his interest in the entireties property is subject to the payment of these fees. It is a question of legitimate anticipation. Mr. Mallalieu may legitimately have anticipated that his entireties property would be subject only to the payments of debts jointly contracted by himself and his wife, whereas on the other hand, Mr. Pierce's attorneys in this case should have entered upon their representation anticipating only that Mrs. Mallalieu's sole assets, at most, would be available for payment of their fees.

Finally, we have the question of whether or not I should order Mr. Mallalieu to pay the fees in this case as "necessaries" for his wife. The jurisdiction of the Orphans' Court is set forth in 20 Pa.C.S. §§711 and 712. With regard to incompetents' estates, section 711(10) provides only that the Orphans' Court has jurisdiction over:

"The administration and distribution of the real and personal property of the estates of incompetents. . . . "

In my judgment, this jurisdiction should not be extended to cover things that are traditionally heard in civil courts: see, e.g., *Purman Estate,* 358 Pa. 187, 56 A.2d 86 (1948) (Orphans' Court has no jurisdiction over suit for fees between living parties). Implicit in a request for necessaries is a determination of the obligation existing between husband and wife to support one another; the jurisdiction of the Orphans' Court, it seems to me, should ordinarily be limited to questions of the distribution of a res (usually an estate) brought before the court because the owner of that estate is either deceased or for some reason legally disabled from disposing of it him or herself.

## ORDER

Accordingly, July 3, 1989, I direct that attorneys' fees in the amount of $500 only shall be paid to Michael B. Kean, Esq., and Katherine S. Brigham, Esq., out of the sole and separate estate of Dorothy V. Mallalieu.