**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1321
_____

THOMAS A. RILEY, JR.,
                                        Appellant
v.

MUTUAL INSURANCE COMPANY LIMITED
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-17-cv-00489)
District Judge: Hon. Paul S. Diamond
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 4, 2019
_____

Before: SHWARTZ, SCIRICA, and FUENTES, <u>Circuit Judges</u>.

(Opinion filed: February 19, 2020)

_____

OPINION*
_____


FUENTES, *Circuit Judge*.



_____

    * This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Appellant, Thomas A. Riley, asserts breach of contract and bad faith claims against Appellee Mutual Insurance Company Limited ("Mutual") as a third-party claimant. Riley filed the present case after Mutual declined to cover a default judgment that Riley obtained against Journal Register East, a media company purportedly insured by Mutual during the relevant period. The District Court held that Riley lacked standing to sue Mutual and granted Mutual's motion for summary judgment. For the following reasons we affirm.

## I.

This appeal arises out of a defamation suit filed in 2012 by Riley against Journal Register East and the Philadelphia Inquirer in the Philadelphia Court of Common Pleas.[1] At the time Riley filed his suit, Journal Register East's corporate parent, Journal Register Company, had an insurance contract with Mutual which provided coverage to Journal Register Company and its subsidiaries (the "Indemnity Agreement").[2] The Indemnity Agreement covered a variety of claims including those for libel, slander, and defamation.

While Riley's defamation suit was ongoing, Journal Register East filed for bankruptcy. As a result, all claims against Journal Register East were automatically stayed, including Riley's defamation proceeding. The Bankruptcy Court established a

---

[1] In that defamation suit, Riley alleged that Journal Register East and the Philadelphia Inquirer defamed him by publishing false reports that, as former Vice Chairman of the Pennsylvania Convention Center, he had improperly directed hundreds of thousands of dollars in fees to his law firm.
[2] App. 5a; 1352a.

Liquidating Trust, overseen by a Liquidating Trustee, and confirmed a Liquidation Plan for Journal Register East on October 15, 2013.

Riley obtained counsel, Janet Charlton, to secure a release from the bankruptcy stay. Counsel for the Liquidating Trustee, Kenneth Enos, and Charlton drafted a stipulation entitled, "Stipulation and Order Between The Liquidating Trustee And Thomas A. Riley, Jr., Modifying The Automatic Stay Solely For The Limited Purpose Of Allowing Plaintiff To Proceed Against Non-Debtor Third Parties And Recover Available Insurance Proceeds" (the "Stipulation").[3] The final draft of the Stipulation was executed by the parties and entered by the Bankruptcy Court on January 7, 2014. Mutual was neither a party to, nor aware of, the Stipulation at the time it was entered by the Bankruptcy Court and asserts that it learned of the Stipulation when Riley moved to lift the litigation stay to proceed with his case against the defendants.

After Mutual was notified of the Stipulation, Mutual and the Liquidating Trustee began to debate who bore the obligation to defend against Riley's claim. Mutual wrote to the Liquidating Trustee stating that, under the Indemnity Agreement, Journal Register East had the duty to defend itself against claims like those brought by Riley, and demanding that the Liquidating Trustee fulfill the obligations of Journal Register East by undertaking the defense. In response, the Liquidating Trustee informed Mutual and Journal Register East that, in light of the Stipulation in which Riley waived his right to pursue the collection of any judgment against Journal Register East, it would not be

---

[3] App. 1828a-1833a.

defending the Riley action. In that communication, counsel for the Liquidating Trustee stated that "[g]iven the posture of these cases and the terms of the stipulation . . . the Debtors do not believe that they have an interest in the lawsuit and even a default judgment against them would not result in any liability for the estates."[4] Mutual repeatedly requested that the Liquidating Trustee undertake the defense, warning that a failure to do so would be a material breach of the Indemnity Agreement.

The common pleas court allowed counsel for Journal Register East to withdraw from Riley's action. Eventually, Riley moved for entry of a default judgment against Journal Register East. At that point, Mutual contacted Enos, counsel for the Liquidating Trustee, and reiterated its position that "the continuing failure and refusal of the Liquidating Trustee to defend the Riley litigation is a breach of the terms and conditions of the Policy resulting in the denial of coverage and disclaiming of any further obligation to the Debtor or to the Estate."[5] Ultimately, neither Mutual, the Liquidating Trustee, nor Journal Register East defended against Riley's defamation claim.

Riley obtained a default judgment against Journal Register East, and the court awarded Riley $1.5 million in damages. Riley then submitted the damages award to Mutual as a claim for payment of $1.5 million under the Indemnity Agreement. When Mutual refused to pay, Riley filed the present suit against Mutual in the Philadelphia Court of Common Pleas arguing that he has standing to sue Mutual as an "assignee" of

---

[4] App. 1871a-1872a; 1876a.
[5] App. 1935a.

4

the Indemnity Agreement.[6]  Mutual then removed the action to federal court and answered the complaint with a counterclaim.[7]  Mutual subsequently moved for summary judgment, which the District Court granted in January 2019 holding that Riley did not have standing to bring suit.

## II.[8]

## A.

Riley argues that he has standing as an assignee of the Indemnity Agreement between Mutual and Journal Register East.  Specifically, Riley states that the Stipulation releasing him from the bankruptcy stay effected an assignment of rights.

Judgment creditors, such as Riley, have standing to sue their tortfeasor's insurance company where they have obtained an assignment of rights under the tortfeasor's insurance policy.[9]  Under Pennsylvania law, both equitable[10] and legal[11] assignments are

---

[6] App. 66a.

[7] After removal to federal court, Riley filed a motion to compel documents relating to Mutual's ability to assist with and control Journal Register East's defense of the defamation lawsuit.  The District Court denied that motion.

[8] The District Court had jurisdiction under 28 U.S.C. §§ 1332 and 1441.  We have jurisdiction under 28 U.S.C. § 1291.  This Court's review of the District Court's grant of summary judgment is plenary.  *Alexander v. National Fire Ins. Of Hartford*, 454 F.3d 214, 219 n. 4 (3d Cir. 2006).

[9] *Gray v. Nationwide Mut. Ins. Co.*, 223 A.2d 8, 11 (Pa. 1966).

[10] An equitable assignment is "any order, writing, or act by the assignor which makes an absolute appropriation of a chose in action or fund to the use of the assignee with the intention to transfer a present interest, although not amounting to a legal assignment." *Melnick v. Pa. Co. for Banking & Trusts*, 119 A.2d 825, 826 (Pa. 1956).

[11] A legal assignment is defined as "a transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, chattel, or other thing." *In re Purman's Estate*, 56 A.2d 86, 88 (Pa. 1948).

only valid where the assignor had the present intent to transfer or divest themselves of a right or interest.[12]  In this case, after assessing the purported assignor's intent, the District Court concluded that no assignment had taken place.[13]  Riley argues that the District Court erred in its conclusion.  We disagree.

First, Riley questions the District Court's conclusion that the plain language of the Stipulation does not reflect an assignment because it does not contain "words typically found in an assignment."[14]  Riley notes that "[u]nder Pennsylvania law, no words of art are required to constitute an assignment; any words that fairly indicate an intention to make the assignee []the owner of a claim are sufficient."[15]  Although Riley is correct that no magic words need be invoked, his argument misses the mark.  Critically, the Stipulation at issue is not simply missing words of art, it is missing any words that "fairly indicate" assignment.

The Stipulation states that its purpose is to modify the litigation stay to allow Riley to proceed with his lawsuit to a final judgment and to recover and collect from any non-Debtor third parties or under any insurance policies.  The relevant text states:

---

[12] *See Melnick*, 119 A.2d at 826 (discussing the intent necessary for legal and equitable assignments).

[13] App. 7a-13a.  The District Court also concluded that an assignment would not have been legal under the Bankruptcy Code.  Because we conclude, based on the plain language of the Stipulation and testimony of the individuals involved, that no reasonable juror could conclude that the purported assignor, Enos, intended the Stipulation to effect an assignment of rights, we do not address whether an assignment would have been legal under the Bankruptcy Code.

[14] Appellant's Br. 23.

[15] *Id.* (citing *In re Poole*, 2015 Bankr. LEXIS 3044, at *17 (Bankr. W.D. Pa. Sept. 9, 2015)).

6

> The Automatic Stay shall be modified for the sole purpose of: (a) permitting the Action to continue to final judgment or resolution of claims against the Debtors, (b) liquidating the claims of Riley (if any); and (c) permitting Riley to recover and collect from any non-Debtor third parties or under any insurance policies; provided, however, that (i) no action may be taken by Riley to execute on, or otherwise attempt to collect any judgment from the assets of the Debtors' estates except as against non-debtor third parties or under any insurance policies, (ii) no action may be taken by Riley to execute on or otherwise attempt to collect any judgment from assets of the Debtors; and (iii) no action shall be taken with respect to any of the Debtors' director and officer insurance coverage.[16]

Notably, the Stipulation does not use the terms "authorize," "assign," "convey," or "transfer," words frequently used to manifest an intent to assign rights.[17] Furthermore, neither Mutual nor the Indemnity Agreement between Mutual and Journal Register Company are specifically mentioned in the Stipulation and the Stipulation provides that it shall not "impact, affect, determine, release, waive, modify, limit, or expand" insurance coverage or "alter any insurance carrier's existing indemnity payment obligations."[18]

In support of his position that the language above effects an assignment, Riley cites an unpublished 2014 case from the Middle District of Pennsylvania, *Hrobuchak v. Federal Insurance Company*, in which a court held that a liquidation plan constituted an assignment where it "authorized" class representatives to pursue declaratory relief against the debtor's insurance carrier.[19] He argues that, similar to *Hrobuchak*, the Stipulation was clear that it contemplated authorizing Riley to pursue a judgment that was to be

---

[16] App. 1831a.
[17] App. 1828a-1833a; *e.g., W. United Life Assur. Co. v. Hayden*, 64 F.3d 833, 838 (3d Cir. 1995).
[18] App. 1831a.
[19] No. 10-0481, 2013 WL 2291875, at *9 (M.D. Pa. May 24, 2013).

7

satisfied only by the Policy's insurance proceeds.[20] Riley's argument, however, overlooks a critical difference in context between Riley's Stipulation and the liquidation plan interpreted in *Hrobuchak*. In *Hrobuchak*, the parties expressly authorized the judgment creditors to pursue a declaratory judgment against the insurer to determine coverage.[21] In the present case, the Stipulation included no express authorization of a declaratory judgment but merely modified a stay to allow Riley's case, in which he still needed to prove liability, to proceed.

Riley also argues that a holding contrary to *Hrobuchak* would lead to an irrational result because the parties understood that Riley was giving up his rights to pursue his claim against Journal Register East in order to collect on Journal Register East's insurance. He argues that "if [Mutual's argument] were accepted, it would mean that Enos transferred an empty promise, allowing Riley the ability to pursue his claim against [Journal Register East], obtain a judgment, and then come away with no recourse against the policy."[22] However, as noted by the District Court, this argument "ignores . . . [that Riley] has standing to institute a garnishment proceeding against [Mutual]" and chose not to proceed on such a basis.[23]

Second, in addition to the lack of evidence in the plain language of the Stipulation that an assignment was intended, the sworn witness testimony does not show that Enos, the purported assignor, intended to assign the Indemnity Agreement to Riley. In fact,

---

[20] Appellant's Reply Br. 2.
[21] 2013 WL 2291875, at *9.
[22] Appellant's Reply Br. 4.
[23] App. 13a.

Enos repeatedly testified that that he <u>did not</u> intend to assign insurance rights under the Stipulation calling such an assignment a "legal impossibility" and stating, "I did not ever intend to assign the - - it was never my belief that the insurance policy or indemnification rights or anything was being assumed and assigned."[24] He also testified that if he had intended an assignment he would have "included language such that, you know, policy X is – or rights under policy X are hereby assumed by the debtors and assigned to Mr. Riley, it would have said something about the cure amount involved . . . and . . . various other bells and whistles . . ."[25] In the face of this decisive testimony, Riley argues that Enos only disclaims an assignment under § 365 of the Bankruptcy Code and leaves open the possibility that an assignment "could be valid under other operation of law."[26] Such a characterization misrepresents Enos' testimony, in which Enos repeatedly stated, without qualification, that he did not intend an assignment. Thus, there is simply no evidence that the purported assignor, Enos, intended the Stipulation to effect an assignment.

Based on the Stipulation's plain language and the testimony in this case we conclude that there is no genuine issue of material fact as to whether the Stipulation was an assignment of rights under the Indemnity Agreement. On this basis, the District Court appropriately granted summary judgment.

---

[24] App. 1393a-1394a; 1418a-1419a.
[25] App. 1429a:21-24–1430a:1-20.
[26] Reply Br. 5.

**B.**

In the alternative, Riley argues that even if he is not an assignee he has standing to bring his claims under Pennsylvania's Direct Action Statute, which allows an injured person to bring suit directly against an insurance company to recover proceeds under a third-party's insurance policy if that third-party has declared bankruptcy.[27]  The District Court concluded that that Riley had waived any claim of standing under 40 P.S. § 117 because he did not reference § 117 in his Complaint or plead facts supporting the required elements of the statute.

On appeal, Riley fails to address the District Court's conclusion that he waived any possible claim of standing under § 117.  Federal Rule of Appellate Procedure 28(a)(9) requires that an appellant's brief contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."[28]  Where an appellant fails to comply with Rule 28(a)(9) by providing argument on a particular issue, that issue is normally considered abandoned or waived and need not be addressed by the court of appeals.[29]  In this case, Riley failed to address the District Court's holding that he waived any possible claim of standing under § 117. Therefore, we conclude that Riley abandoned any argument that he did not waive his claim.  For that reason, we affirm the District Court's holding that Riley waived any

---

[27] 40 P.S. § 117.
[28] *Collins v. Boyd*, 541 F. App'x 197, 203 (3d Cir. 2013)
[29] *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir.1993).

claim for relief under § 117 and conclude that Riley lacks standing to pursue his claims against Mutual. [30]

<h1 style="text-align:center">III.</h1>

For the reasons stated above, we will affirm the District Court's order entering judgment in Mutual's favor.

---

[30] Because we conclude that Riley does not have standing to sue Mutual, we do not reach the following legal issues: (1) whether Mutual owes liability under the Indemnity Agreement; (2) whether the District Court correctly denied Riley's motion to compel the production of policies or manuals that "permit or require" Mutual to "associate with and control [Journal Register East's] defense"; and (3) whether Mutual committed bad faith in denying coverage.